CRAWFORD G. TRULL AND MINNIE LEWIS TRULL v. CAROLINA-VIRGINIA WELL COMPANY, INCORPORATED.

(Filed 18 June, 1965.)

1. **Negligence § 24a— Evidence held insufficient to show that damage to house was result of negligence in operation of well digging equipment.**

   Plaintiff's evidence was to the effect that defendant, pursuant to contract, was digging a well on plaintiff's property in the area pointed out by

TRULL v. WELL CO.

plaintiff, that the well digging machinery was powerful and caused vibrations and "quivering" of the house, that when the equipment had dug to a depth of 40 or 50 feet there was sudden cracking of the walls and ceiling of plaintiff's house, and that digging operations were thereafter resumed without further damage. There was no evidence with respect to the type and power of the drill, the manner of its operation, or its suitability for the particular type of work, or that the machine was operated in any unusual or negligent manner, or that the damage was caused by drilling in too close proximity to the house. *Held:* The evidence is insufficient to show damage to plaintiff's house as a result of negligence on the part of defendant.

2. **Negligence § 4—**

The rule of absolute and strict liability for damages resulting from blasting operations is applicable when the person owning the property damaged is an innocent party and it is shown that the damage resulted from such blasting operations, and therefore this rule of absolute liability cannot be asserted as the basis for recovery of damages coincident with well digging operations when the person whose property is damaged is not a third party but had employed defendant to dig the well, or when it is not shown that the damage resulted from vibrations emanating from the well digging machinery.

3. **Same; Negligence § 5—**

The rule of absolute liability for damages resulting from a dangerous instrumentality operates regardless of the presence or absence of negligence, while the doctrine of *res ipsa loquitur* is a rule of evidence which operates as *prima facie* proof of negligence, and the two are separate and distinct.

4. **Negligence § 5—**

The doctrine of *res ipsa loquitur* is not applicable unless defendant has control of all the factors which might have caused the damage and does not apply when more than one inference can be drawn from the evidence as to the cause of the damage.

5. **Negligence § 24b—**

The doctrine of *res ipsa loquitur* does not apply to damage to plaintiff's house coincident with vibrations set up by the operation of defendant's well digging equipment on plaintiff's property, since in such instance defendant is not in control of all of the factors which might have caused the damage, nor does the doctrine apply when there is no evidence establishing a causal relation between the operation of the drill and the damage to the house.

6. **Negligence § 21—**

Negligence is not presumed from the mere fact of injury.

APPEAL by plaintiffs from *Gambill, J.,* November 16, 1964, Session of GUILFORD (Greensboro Division).

*Younce & Wall by Percy L. Wall and Max D. Ballinger for plaintiffs.*

*Smith, Moore, Smith, Schell & Hunter and William T. Combs for defendant.*

MOORE, J.   This is a civil action instituted 9 July 1963 by plaintiffs to recover damages for injury to their dwelling allegedly caused by the negligence of defendant in well-drilling operations on their premises.

Plaintiffs' evidence tends to establish these facts: Plaintiffs' residence is located at 3811 Lawndale Drive, Greensboro. The exterior walls of the house are of "Mt. Airy Granite," the basement walls are cinder block and stone, and the foundation and footings are reinforced concrete. Plaintiffs employed defendant to drill a well for the purpose of supplying water for the house. Mr. Smith, agent of defendant, came to the house, viewed the premises and inquired where the well was to be located. Male plaintiff pointed out an area at the rear of the house and stated, ". . . in this area here where you think best to put it." Mr. Smith said he would put it anywhere plaintiffs wanted it, but that it would have to be 50 feet or more from the ceptic tank. He was told to put it wherever he thought best. The drilling was begun a few days later. The well was located within the area pointed out by male plaintiff and about 15 feet from the house. The instrument used was a "hydraulic drill" mounted on a trailer; it was a "large outfit" and "new looking," and "It was a pretty powerful machine and looked like it was doing the work, . . . going right on down." When the machine was turned on "there was a terrible noise and vibration in the house." The house "quivered." There was a "trembling of the earth" at and around the machine. Later "something like fine gravel falling" was observed in the house, and suddenly cracks appeared in the plaster walls and ceiling in the house — some of them more than an inch wide. The basement and all of the rooms were damaged; mortar fell from between the granite blocks at places in the exterior walls; columns on the front porch cracked. As soon as the damage was discovered the drilling was stopped. At that time the drilling had gone to a depth of 40 to 50 feet. After surveying the damage, plaintiffs decided to permit the drilling to continue. The well when finished was 201 feet deep. No further damage resulted from resumption of the drilling. Mr. Smith presented male plaintiff a bill for the work and was reminded of the damage to the house. He replied, "Well, you don't have to worry about that, it will be taken care of." Thereupon, the bill was paid. The house was damaged to the extent of $20,000. Some damage was beyond repair; such repairs as could be made would cost $10,000.

Defendant offered no evidence and moved for nonsuit. The motion was allowed and judgment was entered dismissing the action. Plaintiffs appeal, assigning as error the allowance of the nonsuit.

Plaintiffs allege that the damage was proximately caused by the negligence of defendant. The specifications of negligence are: (a) defendant selected a site too near to the house "for the type of equipment which was used," defendant knowing that the "extensive vibrations . . . would cause or were likely to cause" damage to the house; (b) "defendant used the wrong type of well-drilling equipment for drilling or constructing a well within a few feet of plaintiffs' house"; and (c) defendant operated the equipment in a careless, negligent and unworkmanlike manner.

The substance of the evidence is that the house was in good condition before the drilling began, the drilling operations caused "trembling" of the earth in and around the machine and noticeable "quivering" of the house, thereafter damage to the structure occurred more or less suddenly, and after this occurrence the completion of the drilling operation caused no further damage. There is no evidence, with respect to the type and power of the drill, its manner of operation, or its suitability for the particular work. The evidence is merely that it was large and mounted on a trailer, "pretty powerful," made a noise and set up vibrations. There is no evidence tending to show that it was customary in the trade to do that type of work with a lighter and less powerful machine, that a less powerful machine was practical for sinking a well to a depth of 200 feet, that the damage would not have occurred if the machine had been operated even at the farthest point from the house within the area designated by plaintiffs, or that the machine was operated in any unusual or negligent manner. It is not reasonable to infer that the parties contemplated that the work should be done by hand or by a machine that would set up no vibrations. That there was a relationship between the operation of the machine and the damage to the house, seems clear. But it is likewise clear that plaintiffs have not proved negligence as specified in the complaint. *Poultry Co. v. Equipment Co.*, 247 N.C. 570, 101 S.E. 2d 458. Furthermore, the direct physical cause of the damage to the house rests in the realm of speculation. The vibrations from the machine caused the "quivering" of the house. But were they responsible for the sudden opening of walls and ceiling? Were the vibrations sufficient to cause the damage? Was the foundation of the house inherently weak? Was the condition of the earth underneath the house such that even normally harmless vibrations would cause it to move or give way? No witness undertakes an explanation of the direct physical cause of the damage. This much we are told — the damage suddenly occurred after the drill had been in operation for some time. The drilling was stopped. When it was resumed, no further damage resulted by reason of vibrations or from any other cause.

Plaintiffs insist, however, that the failure to prove the specifications of negligence does not entitle defendant to a nonsuit, that liability should be imposed without necessity of showing fault on the part of defendant, *i.e.*, that the rule of absolute and strict liability, applicable in cases involving damage from the use of high explosives, is appropriate to the facts in this case. In short, plaintiffs contend that this case is analagous to a blasting case since they have a common factor, vibrations.

The rule referred to is that one who is lawfully engaged in blasting operations is liable without regard to whether he has been negligent, if by reason of the blasting he causes direct injury to neighboring property or premises by casting rocks or debris thereon or by concussion or vibrations set in motion by the blasting. This, because "Blasting is considered intrinsically dangerous; it is an ultrahazardous activity, at least in populated surroundings, or in the vicinity of dwelling places or places of business, since it requires the use of high explosives and since it is impossible to predict with certainty the extent or severity of its consequences." 35 C.J.S., Explosives, § 8a, p. 275. This rule — the rule of liability without allegation and proof of negligence — has been adopted in blasting cases by a majority of the courts and was recently applied in this State. *Insurance Co. v. Blythe Brothers Co.*, 260 N.C. 69, 131 S.E. 2d 900. Absolute liability is imposed because high explosives are so dangerous that their use ought to be at the user's risk. *Exner v. Sherman Power Const. Co.*, 54 F. 2d 510, 80 A.L.R. 686 (CC, 2C). The law casts the risk of the venture on the person who introduces the peril in the community. Blasting operations are dangerous and should pay their own way. *Wallace v. A. H. Guion & Company*, 117 S.E. 2d 359 (S.C.). The theory upon which blasting cases have been tried and decided in this jurisdiction has varied — probably because of the different theories upon which plaintiffs have proceeded. Actions have been grounded on negligence, trespass, nuisance, and finally the rule of absolute liability. *Insurance Co. v. Blythe Brothers Co., supra;* 40 N.C. Law Rev. 640.

Plaintiffs cite no direct authority in support of their contention. In fact, our research has not uncovered any case directly in point with the case at bar. In our opinion the common factor, vibrations, is not sufficient to place the case under consideration in the same category as blasting cases. Machines, motors and instrumentalities which cause vibrations are in such common use in present-day activities and the probability of damage from their use is so variable that the mere fact that all of them cause vibrations is not a reasonable basis for common classification for liability. There are many cases involving damage by vibrations set in motion by instrumentalities other than explosives,

*e.g.*, pile drivers, drills, pavement breakers, etc. The overwhelming majority require allegation and proof of negligence. See *Moneier v. Koebig*, 66 S.E. 2d 465 (S.C.); *Ted's Master Service, Inc. v. Farina Brothers Co., Inc.*, 178 N.E. 2d 268 (Mass.); *Dussell v. Kaufman Constr. Co.*, 157 A. 2d 740, 79 A.L.R. 2d 957 (Pa.). For coverage of this subject, with summaries of cases, see "Anno.: Vibrations — Property Damage — Liability," 79 A.L.R. 2d 979-985.

There are a few exceptions. In Louisiana the rule of absolute and strict liability has been applied in pile-driving cases by reason of a statute prohibiting an owner from doing work on his own land which might cause damage to his neighbor. *Selle v. Kleamenakis*, 112 S. 2d 50. The rule has also been applied (in the absence of statute) in pile-driving cases in England and in Connecticut. *Hoare & Company v. McAlpine*, (1923) 1 Ch. 167, 12 B.R.C. 385; *Caporale v. C. W. Blakeslee and Sons, Inc.*, 175 A. 2d 561. In *Caporale* it is said, "To impose liability without fault, certain factors must be present: an instrumentality capable of producing harm; circumstances and conditions in its use which, irrespective of a lawful purpose or due care, involve a risk of probable injury to such a degree that the activity fairly can be said to be intrinsically dangerous to the person or property of others; and a causal relation between the activity and the injury for which damages are claimed. Defendant actor, even where he uses due care, takes a calculated risk which he, and not the innocent injured party, should bear." In each of the cases, *McAlpine* and *Caporale,* the court considers that the causal relation between the activity and the injury was established, emphasizes the intrinsically dangerous nature of the pile driver and the extensiveness of property damage, and makes the point that the owner of the damaged property was an innocent party. The principal and distinguishing feature of the rule of "liability without fault" is that negligence is not involved, or, rather, that the presence or absence of negligence is immaterial. All that the injured party must show is that the instrumentality is inherently dangerous within the meaning of the rule and that the activity caused the injury. The law then imposes liability on the actor who has introduced and set in motion the harmful force. Thus, the operation of the instrumentality, though used for a lawful purpose and with due care, becomes a legal wrong, against the harmful effect of which the actor is insurer. The innocent property owner is protected.

Whether this Court will extend the rule of absolute and strict liability to vibration cases other than those involving the use of high explosives, is a question that must await another case and another day. Even if we should be inclined to follow *McAlpine* and *Caporale* — the minority view — the rule is not applicable to the facts in the case at

bar. Defendant was drilling a well on plaintiffs' property in furtherance of a contract between plaintiffs and defendant; the activity was sought by plaintiffs and they brought defendant upon their premises to do the very thing he was doing — drilling a well. The plaintiffs are not innocent parties within the meaning of the rule as it has been applied. Here the activity was not upon adjoining or neighboring property or upon an adjoining thoroughfare, nor were the plaintiffs unconcerned with the activity itself. Here the duties of the parties *inter se* are to be determined by what was within their contemplation when they contracted. Furthermore, plaintiffs have not made a *prima facie* showing that the drill was intrinsically harmful or that the proximate cause of the damage were the vibrations set up by the drill.

Plaintiffs contend, in the alternative, that the doctrine of *res ipsa loquitur* is applicable to this case. The rule of absolute and strict liability differs from the doctrine of *res ipsa loquitur* in that the former is a rule of liability which operates regardless of the presence or absence of negligence, while the latter is a rule of evidence which operates as *prima facie* proof of negligence. *Young v. Anchor Co.*, 239 N.C. 288, 79 S.E. 2d 785. The doctrine of *res ipsa loquitur* has been applied in a case in which an exploding boiler caused damage *(Harris v. Mangum,* 183 N.C. 235, 111 S.E. 177), and in a case in which damage resulted when gasoline escaped from storage and was ignited *(Newton v. Texas Co.,* 180 N.C. 561, 105 S.E. 433), on the theory that a boiler will not explode and gasoline will not escape from storage in the absence of neglect of the duties of inspection and proper management. "For the doctrine to apply the plaintiff must prove . . . that the occurrence causing the injury is one which ordinarily does not happen without negligence" and "that the instrumentality which caused the injury was under the exclusive control and management of the defendant." *Jackson v. Gin Co.*, 255 N.C. 194, 120 S.E. 2d 540. It is true that the drill and its operation were under the exclusive control and management of defendant, but the evidence does not establish the causal relation between the operation of the drill and the damage to the house, nor that defendant had control of all factors which might have caused damage. *Res ipsa loquitur* does not apply where more than one inference can be drawn from the evidence as to the cause of the injury. *Springs v. Doll,* 197 N.C. 240, 148 S.E. 251; *Lamb v. Boyles,* 192 N.C. 542, 135 S.E. 464. It has been held in other jurisdictions that the doctrine does not apply in vibration cases. *Ted's Master Service, Inc. v. Farina Brothers Co., Inc., supra; Ockman v. T. L. James & Co., Inc.,* 124 S. 2d 778 (La.).

Defendant owed plaintiffs the duty of due care in the selection and operation of appropriate well-drilling equipment, in the location of the well, and in the inspection of the premises and the adoption of safety

measures, all to the end that in the prosecution of the work the plaintiffs would not suffer injury to their dwelling because of his negligent acts or defaults. *Savannah Asphalt Co. v. Blackburn,* 99 S.E. 2d 511 (Ga.); *Petillo v. Kennedy & Smith,* 31 N.Y.S. 2d 481; *Moneier v. Koebig, supra; Dussell v. Kaufman Constr. Co., supra.* However, plaintiffs have failed to produce evidence of any negligent breach of duty, as specified by them in the complaint, on the part of defendant. Negligence is not presumed from the mere fact of injury. *Lane v. Dorney,* 250 N.C. 15, 108 S.E. 2d 55.

The judgment below is
Affirmed.