ELLA COLCLOUGH v. THE GREAT ATLANTIC & PACIFIC TEA COMPANY, INC.

No. 6814SC382

(Filed 9 October 1968)

1. **Negligence § 53— duty of store owner to invitee**

2. **Negligence § 57— invitee's injury on store premises — sufficiency of evidence**

Plaintiff's evidence tending to show that her left little finger was in-

jured when the wheel of defendant's grocery cart became jammed while she was pushing the cart on defendant's premises, plaintiff and her husband testifying that a dirty string resembling a mop string was wrapped around the inside of the wheel, is insufficient and too speculative to support a jury finding of defendant's negligence.

**3. Negligence §§ 31, 57— inapplicability of res ipsa doctrine to show proprietor's negligence**

Doctrine of *res ipsa loquitur* is inapplicable to carry to jury the issue of store proprietor's negligence in furnishing to plaintiff a defective grocery cart, when (1) plaintiff's own evidence offered an explanation as to the cause of her injury, (2) there was nothing in plaintiff's evidence to permit as a reasonable inference that her injury would not have occurred but for some negligence on defendant's part, and (3) at the time of plaintiff's injury the grocery cart had been within her control for some 20 to 25 minutes.

APPEAL by plaintiff from *Hall, J.,* March 1968 Civil Session of DURHAM Superior Court.

This is a civil action commenced 26 November 1965 in which plaintiff seeks to recover damages for personal injuries suffered by her on 1 December 1962 while she was a customer in defendant's self-service store in Chapel Hill, North Carolina. Plaintiff alleged that a wheel on a shopping cart furnished by defendant for her use in collecting groceries from the shelves in defendant's store became jammed while she was pushing it, causing the cart to stop suddenly and thereby inflicting injuries to plaintiff's left little finger.

In her complaint plaintiff alleged her injuries were caused by defendant's negligence in failing to keep the shopping cart in good condition and repair; in failing to keep the wheels of the cart free from debris, strings, and other matter that could restrict the motion of the cart; in failing properly to inspect the cart; and in furnishing for plaintiff's use a defective cart when defendant knew, or in the exercise of due care should have known, that the cart was in defective condition. Defendant filed answer denying negligence on its part and pleading contributory negligence on the part of the plaintiff.

At the trial plaintiff testified that on the date in question she was a customer in defendant's self-service store, that she got a grocery cart from among approximately 25 or 30 of such carts made available by defendant, and that she started selecting groceries from the counters. Plaintiff testified:

". . . From the time I first got the cart, I did not notice anything unusual about it. I did not notice anything unusual

about it mechanically or anything when I first started pushing it up and down the aisles.

"After I had been up three or four counters and selected several items and started around another counter, the carriage just stopped all of a sudden and the left wheel on the carriage jammed — and I was in a hurry because it was late — and it just jammed my hand back real sudden. I heard my finger pop, and I felt it, and I turned sick on my stomach as if I was going to faint.

"I had been in the store at that time approximately 20 or 25 minutes and during said time I did not notice anything unusual about the cart. The cart moved freely as I went from counter to counter. At the time the cart suddenly stopped, I had approximately 25 to 30 items in the cart. . . .

"I observed the wheels on the cart shortly after I heard my finger snap. It looked like a string — it was a black, dirty-looking thing wrapped around the inside of the wheel."

Plaintiff's husband testified:

"I was with my wife at the Eastgate A & P Store in Chapel Hill on December 1, 1962, while she was doing this shopping. I looked at the cart and it looked like a dirty mop string wrapped around the right rear wheel of it. I would describe this cart as an aluminum product with solid rubber wheels on it, and two front wheels will turn, and has a bottom compartment and a top compartment. . . ."

There was evidence of plaintiff's injury and treatment but no evidence other than the testimony of plaintiff and her husband as to the events which occurred while plaintiff was in defendant's store.

At the close of plaintiff's evidence the court allowed defendant's motion for nonsuit and plaintiff appealed.

*Blackwell M. Brogden for plaintiff appellant.*

*Spears, Spears, Barnes & Baker, by Marshall T. Spears, Jr., for defendant appellee.*

PARKER, J.

[1, 2]    Defendant was not an insurer of plaintiff's safety while she was on its premises. *Smithson v. Grant Co.*, 269 N.C. 575, 153 S.E. 2d 68. Defendant did owe to the plaintiff, as it did to all of its invitee customers, the duty to exercise ordinary care to keep its

premises and the facilities which it furnished for their use in reasonably safe condition. Included in this duty was the obligation to exercise ordinary care in making such inspections as might be reasonably required to ascertain that the premises and facilities were being maintained in reasonably safe condition. Included also was the obligation to give warning of and to eliminate any hidden dangers or unsafe conditions of which defendant knew or in the exercise of reasonable supervision and inspection should have known. *Lanier v. Roses Stores, Inc.,* 2 N.C. App. 501, 163 S.E. 2d 418. In the present case plaintiff's evidence, even when considered in the light most favorable to her, is not sufficient to support a permissible inference that defendant breached any duty owed by it to the plaintiff, and the judgment of nonsuit was properly entered.

Plaintiff offered no evidence to show any defect in the construction or mechanism of the grocery cart. She testified that the left wheel — her husband said it was the right wheel — suddenly jammed, causing her injury, and that when she examined the cart shortly thereafter she observed a string wrapped around the inside of the wheel.

Plaintiff's evidence leaves in the realm of sheer speculation the answer to such questions as:

When and how the string became entangled in the wheel; if this occurred before plaintiff selected and started using the cart, whether for a brief or substantial period of time; whether the string became entangled in the wheel by having been dropped on it from above or by being picked up from the floor; if from the floor, in what manner the string got there and for how long it had been there. On all of these questions there was simply no evidence from which the jury might make even a rational guess as to the answer.

Plaintiff's husband testified that the string "looked like a dirty mop string." Even should it be permissible for the jury to assume from the descriptive words used that the string had actually come from a mop and that in the ordinary course of events no one other than an employee of the defendant would be likely to use a mop in defendant's store, there was still no evidence as to how or when the mop had been so used and no evidence whatsoever that it had been employed in a negligent manner. For the jury to have been able to find from plaintiff's evidence in this case that her injury was caused by the actionable negligence of the defendant would have required the linking together of too long a chain fabricated from speculations linked to inferences drawn from suppositions founded on other speculations.

The case of *Lee v. Green & Co.*, 236 N.C. 83, 72 S.E. 2d 33, relied on by plaintiff, is distinguishable. In that case the plaintiff offered evidence tending to show that the slick substance on the floor of defendant's store which caused her to slip and fall was the same type of substance which had been used to treat the entire floor. A majority of the Supreme Court held that such evidence was sufficient to support the inference that the hazardous condition complained of had been created by or under the direction or sufferance of the defendant in connection with a general application of floor oil on its entire floor. If such permissive inference should be drawn by the jury, it followed as a necessary corollary that knowledge of the hazardous condition so created by defendant would be inferred. In the case now before us there was no evidence sufficient to support an inference that any hazardous condition had been created by or under the direction or sufferance of the defendant and nothing to support an inference that the defendant had any knowledge or in the exercise of due care could have had any knowledge of the existence of any hazardous condition.

**[3]** Nor does the doctrine of *res ipsa loquitur* apply. Plaintiff's evidence offered an explanation as to the cause of her injury, to wit: the jamming of the wheel on the cart as a result of the string becoming entangled therein. Nothing in the circumstances disclosed by her evidence would permit as a reasonable inference that this would not have occurred but for some negligence on the part of the defendant. Furthermore, at the time plaintiff's injury occurred the cart was not in the exclusive control of the defendant but for some 20 to 25 minutes had been within the control of the plaintiff.

The defendant's motion of nonsuit was properly allowed and the decision of the superior court is

Affirmed.

