DEBRA SUE EVERS McPHERSON, PLAINTIFF v. HIGH POINT MEMORIAL HOSPITAL, INC., DEFENDANT v. FEDERAL SIGNAL CORPORATION, THIRD-PARTY DEFENDANT

No. 7919SC29

(Filed 2 October 1979)

1. Negligence § 6.1— res ipsa loquitur—circumstances where inapplicable

In N. C. the doctrine of *res ipsa loquitur* is not applicable where all the facts are known and testified to, where the evidence establishes that more than one inference can be drawn as to the cause of the injury, where the existence of negligence is not the more reasonable probability, where the matter is purely a question of conjecture, where the accident was due to an act of God or the tortious act of a stranger, where the accident which results in injury is defined by law, and where the injury-producing instrumentality is not under the exclusive control and management of defendant.

2. Negligence § 6.1— toll bar at hospital entrance—malfunction resulting in injury—res ipsa loquitur applicable

Plaintiff's evidence supported the application of the doctrine of *res ipsa loquitur* where it tended to show that a toll bar at the entrance to a hospital parking lot rose and then fell immediately, injuring plaintiff; the toll bar was installed and maintained by defendant, who exercised exclusive ownership, management and control over the parking lot and traffic gate; and it is a matter of common human knowledge that a device installed for the specific purpose of regulating the flow of traffic entering and exiting a parking lot does not malfunction in such a manner as to injure those people entering or exiting if such device is properly maintained in a safe condition.

APPEAL by plaintiff from *Davis, Judge.* Judgment entered 6 September 1978 in Superior Court, RANDOLPH County. Heard in the Court of Appeals on 20 September 1979.

In this action the plaintiff seeks to recover damages for personal injuries alleged to have been caused by the defendant High

Point Memorial Hospital, Inc., in the maintenance and operation of a "parking toll bar" which controlled the entrance and exit ways of the defendant's parking lot. Plaintiff's injuries were sustained when "the toll bar rose and . . . suddenly fell back down striking . . . the face visor of the plaintiff's [motorcycle] helmet. The plaintiff's helmet visor was knocked off . . . and the plaintiff was hit in the mouth by the toll bar." Plaintiff argues that this movement of the toll bar was evidence of a malfunction which resulted from the negligence of defendant in its operation and maintenance.

Defendant, in its answer, denied plaintiff's material allegations and further alleged that its liability for negligence, if any existed, was barred by plaintiff's contributory negligence. Such contributory negligence, defendant contends, consisted of plaintiff's failure "to move or duck her head or observe the parking lot bar . . . despite the fact that the bar was in the open and clearly visible to her. . . ."

Defendant also filed a third party complaint against Federal Signal Corporation, the manufacturer and seller of the parking lot gate, alleging that any defects in the system were present when manufactured and sold to the hospital. Federal Signal answered, denying any negligence in the design and manufacture of the system and asserting that any defect "was caused and brought about by the defendant Hospital's own personnel in changing, repairing, and tampering with the system. . . ."

The case came on for trial, and plaintiff offered evidence which tended to show the following:

On 20 October 1973 plaintiff and her boyfriend traveled on his 450 Honda motorcycle to the High Point Memorial Hospital to visit his mother. Upon arriving, they turned into the parking lot across from the entrance to the hospital and pulled up to the gate. Plaintiff was riding on the back seat of the motorcycle. Using a diagram prepared by her to illustrate her testimony, plaintiff described the operation of the toll bar and its movement as they approached it thusly:

> As we approached this traffic installation to the defendant's . . . parking lot there, we pulled up—when you pull up

to the board, the board comes up. When I say the board, I am talking about the arm that blocks you as you enter.

. . .

[The] concrete island in the middle is three feet [wide] . . . . There are three electrical installations on this aisle . . . . [T]he one that you meet, the electrical box, it actually controls the exit. The next is the electrical box [that] controls the entrance . . . . [T]hose two electrical boxes . . . have the traffic arms on them . . . . The third electrical box [is the coin box] . . . .

The traffic arm was made of plywood. It was five inches wide . . . . It would be approximately an inch [thick]. It was painted and it had . . . black and white stripes. It had a reflector bar in the middle of it.

. . .

We pulled to the gate and stopped on the entrance side. And then the board came up . . . . There wasn't any obstructions [sic] in the entrance lane as we entered the parking lot. Then [my boyfriend] let out the clutch on his motorcycle and we started rolling and the bar dropped down on his helmet and dropped back and hit me in the mouth. I had a helmet on and a face shield and it knocked the face shield off . . . . [W]hen it hit me . . . the board broke in two.

Plaintiff also offered the testimony of an eyewitness to the accident who stated that she was a patient at the hospital on the day of the accident and that she had been looking out over the parking lot when plaintiff and her boyfriend pulled up to the tollgate. According to this witness, "They stopped as they got inside and I saw the arm go up and . . . it came down between them . . . ." She testified that the gate had been repaired by the next day and that she had not seen the arm go up and come straight back down without stopping at the top on any other occasion.

David W. Lobb, the hospital's executive director, was subpoenaed by plaintiff "to bring all records relating to the installation of the signaling device, names and addresses of them and their specific location of employment." He testified that all he could find was an "equipment depreciation" record which indicated that the system had been installed in December of 1953.

Although the hospital had purchased security services from State Merchant Associate Control since 1971, Lobb said that he did not have the names of the security personnel who were assigned to the lot on the day plaintiff was injured.

Plaintiff concluded her case with extensive medical testimony from the dentist who treated her. At the close of all her evidence, the trial judge granted defendant's motions for directed verdicts. From a judgment directing a verdict for the defendant hospital, plaintiff appealed.

*Ottway Burton for plaintiff appellant.*

*Henson and Donahue, by Perry C. Henson, for defendant appellee High Point Memorial Hospital, Inc.*

*Womble, Carlyle, Sandridge and Rice, by Allan R. Gitter, for defendant appellee Federal Signal Corporation.*

HEDRICK, Judge.

Although plaintiff does not argue the question in her brief, this case squarely raises the issue of whether the doctrine of *res ipsa loquitur* will apply to carry plaintiff's case to the jury. This evidentiary principle is grounded in the superior logic of ordinary human experience and operates to permit an inference of negligence from the very happening of the incident itself. 2 Stansbury's N. C. Evidence, *Burden of Proof and Presumptions* § 227 (Brandis rev. 1973). In *Newton v. Texas Co.*, 180 N.C. 561, 567, 105 S.E. 433, 436 (1920), our Supreme Court, in what has become a classic statement of the rule, described it this way:

> [W]hen a thing which causes injury is shown to be under the management of the defendant, and the accident is such as in the ordinary course of things does not happen, if those who have the management use the proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from a want of care.

The reason for the rule is one of necessity. That is, when the circumstances logically suggest a probability of negligence, yet the necessary evidence to prove it is absent or unavailable, it is only just that plaintiff be permitted to have a jury decide the question. Obviously, then, if there is concrete evidence, direct or

circumstantial, of defendant's negligence, plaintiff does not need the benefit of the *res ipsa* rule. Thus, it has been held that, when the evidence is sufficient to disclose the cause of the accident, *res ipsa* does not apply, since, in such a case, nothing is left to inference. *Benton v. North Carolina Public-Service Corp.*, 165 N.C. 354, 81 S.E. 448 (1914); *Colclough v. The Great Atlantic & Pacific Tea Co., Inc.*, 2 N.C. App. 504, 163 S.E. 2d 418 (1968). *See also Stansbury, supra;* 58 Am. Jur. 2d, *Negligence* § 477 (1971).

**[1]** We recognize that the *res ipsa* doctrine is not only difficult to articulate, but, even more frequently, it is troublesome to apply. One analytical aid is to identify those situations in which the rule does not arise. In North Carolina, as elsewhere, the following instances preclude the applicability of *res ipsa:*

(1) Where all the facts are known and testified to;

(2) Where the evidence establishes that more than one inference can be drawn as to the cause of the injury;

(3) Where the existence of negligence is not the more reasonable probability;

(4) Where the matter is purely a question of conjecture;

(5) Where the accident was due to an act of God or the tortious act of a stranger;

(6) Where the accident which results in injury is defined by law;

(7) Where the injury-producing instrumentality is not under the exclusive control and management of the defendant.

9 Strong's N. C. Index 3d, *Negligence* § 6.1 (1977).

We do not believe that the facts of the instant case bring it within any of these categories so as to forthwith rule out the applicability of *res ipsa.* Accordingly, we turn to a consideration of the relevant cases wherein the rule of *res ipsa* has been held properly available to take the case to the jury.

In *Young v. Anchor Co., Inc.*, 239 N.C. 288, 79 S.E. 2d 785 (1954), a case very much on point with the case at bar, plaintiff undertook to use the escalator in defendant's store. Shortly after

the escalator began its ascent, "there was a sudden jerk, a stop, and a quick move forward which . . . threw [plaintiff] on her side and caused her to fall . . . ." *Id.* at 289, 79 S.E. 2d at 786. Defendant's evidence showed that the escalator was in general use in department stores, and that it was "properly constructed, maintained, inspected and operated." *Id.*, 79 S.E. 2d at 787. Nevertheless, our Supreme Court affirmed a jury verdict for plaintiff. After noting that defendant would have been entitled to a directed verdict unless the facts of the case called for the application of *res ipsa*, the Court said:

> The mechanical device known as an escalator, which the defendant furnished to its customers and invitees . . . , was installed by the defendant and was under its exclusive management and control, imposing upon it the continuous duty of inspection and maintenance, and due care in its operation, and the facts as testified by plaintiff of the sudden jerk, stoppage and unusual movement on the occasion alleged was such as to raise the inference that the accident complained of would not have occurred unless there had been negligent failure to inspect and maintain.

*Id.* at 291, 79 S.E. 2d at 788.

Similarly, in *Page v. Sloan*, 12 N.C. App. 433, 183 S.E. 2d 813 (1971), *aff'd.*, 281 N.C. 697, 190 S.E. 2d 189 (1972), a case in which an electric water heater in a motel exploded and killed a motel guest, it was held that the doctrine of *res ipsa loquitur* precluded summary judgment for defendant where the evidence established that the heater was under the exclusive managment and control of the motel owners and that they had undertaken the maintenance of it. Observing that "[i]t is a matter of common knowledge that electric water heaters . . . [w]hen in a safe condition and properly managed, . . . do not usually explode," *Id.* at 438, 183 S.E. 2d at 816, the court concluded: "[T]herefore, in the absence of explanation, the explosion of an electric hot water heater reasonably warrants an inference of negligence." *Id.*

Another relevant case is *Collins v. Virginia Power and Electric Co.*, 204 N.C. 320, 168 S.E. 500 (1933). In *Collins*, defendant maintained a primary wire charged with electricity along a highway from which secondary wires ran across plaintiff's premises and attached to his warehouse. In an action for damages, the

Court held that evidence tending to show that the plaintiff's warehouse caught fire at the point where defendant's wire was attached to the warehouse by a bracket, and that all wires, poles, brackets and other electrical equipment were installed and maintained by defendant and were under its exclusive control and management, was sufficient to submit the case to the jury under the doctrine of *res ipsa loquitur*.

Apparently anticipating that the *res ipsa* rule is a factor in the present case, the defendant hospital, citing *Watkins v. Taylor Furnishing Co.*, 224 N.C. 674, 31 S.E. 2d 917 (1944), argues that plaintiff offered no proof of any defect in the toll bar. Neither was there any proof, defendant asserts, "as to whether any such incident had ever occurred before or that it had ever malfunctioned on a previous occasion."

First, we point out that the absence of such proof was also true in the above-cited cases of *Young v. Anchor Co., Page v. Sloan* and *Collins v. Virginia Power and Electric Co.* Second, we reiterate that the doctrine of *res ipsa loquitur* is merely a mode of proof, a means of showing that some negligence was the probable cause of the accident. Third, with reference to *Watkins* and other cases where certain equivocal inconsistencies have appeared in the decisions of the North Carolina courts, we quote from Stansbury, *supra*:

> The recognition of the sufficiency of this inference of general negligence is perhaps the most distinctive feature of the *res ipsa* doctrine. Yet, as fundamental as this feature is, it has not always been recognized and followed by the North Carolina Court. The absence of any evidence of specific acts of negligence has been emphasized in a number of decisions in which *res ipsa* was held inapplicable [citing *Warren v. Jeffries*, 263 N.C. 531, 139 S.E. 2d 718 (1965)], and in some of these this emphasis seems to have caused the Court to overlook the possibility that the occurrence itself could permit an inference of general negligence. [Citations omitted.]

Proof in a case need not preclude every inference other than that of the defendant's negligence. If the inference that his negligence caused the injury is more likely than other permissible inferences, the doctrine should apply.

[2]   Rather than trying to resolve these conspicuous conflicts in the cases, we choose to follow what we perceive to be the better-reasoned decisions of *Young v. Anchor Co., Page v. Sloan,* and *Collins v. Virginia Power and Electric Co., supra.* Applying the rule of those cases to the facts of this case, we think it plain that plaintiff's evidence supports the application of *res ipsa.* At this stage of the proceedings, the evidence tends to show that the parking lot toll bar was installed and maintained by the defendant, who exercised exclusive ownership, management and control over the parking lot and this traffic gate. Moreover, we believe it a matter of common human knowledge that a device installed for the specific purpose of regulating the flow of traffic entering and exiting a parking lot does not malfunction in such a manner as to injure those people entering or exiting the lot, if such device is properly maintained in a safe condition. In the absence of explanation, therefore, we hold that such an occurrence reasonably sustains an inference of negligence sufficient to submit the case to the jury. It follows that the judgment of the trial court granting the defendant's motion for a directed verdict was error, and the same is hereby reversed.

Reversed and remanded.

Judges CLARK and MARTIN (Harry C.) concur.