LINDA JACKSON, ADMINISTRATRIX OF THE ESTATE OF MARY MAGDALENE JACKSON v. THE HOUSING AUTHORITY OF THE CITY OF HIGH POINT

No. 8318SC1118

(Filed 5 March 1985)

1. **Landlord and Tenant § 8.3; Negligence § 50.1— wrongful death of tenant—ordinary negligence—directed verdict for defendant improper**

    In an action arising from the death of a tenant in one of defendant's apartments, the court erred by directing a verdict against defendant on her ordinary negligence claim at the close of all the evidence. Defendant was engaged in a proprietary activity; the evidence viewed favorably for plaintiff was sufficient to support an inference that decedent's death proximately resulted from defendant's failure to exercise due care in preventing a heating flue from becoming clogged by dead birds and other debris; and the evidence tended to show that defendant's failure to maintain the heater flue in a safe condition violated G.S. 160A-425 and Section 9-1-79 of the High Point Ordinances, which would be negligence per se, and G.S. 42-42, which would be evidence of negligence.

2. **Landlord and Tenant § 8.3; Negligence § 50.1— wrongful death of tenant—punitive damages—directed verdict for defendant improper**

    In an action arising from the death of a tenant in one of defendant's apartments, the trial court erred by dismissing plaintiff's claim for punitive damages on the pleadings and directing a verdict against plaintiff on the claim of "malicious, wilful, or wanton injury, or gross negligence." Punitive damages are generally recoverable in an appropriate wrongful death case, and no proviso in our Wrongful Death Act or elsewhere in the General Statutes especially exempts municipalities from such liability. G.S. 28A-18-2(b)(5).

3. **Landlord and Tenant § 8.3; Negligence § 50.1— wrongful death of tenant—implied warranty of habitability—directed verdict for defendant improper**

    In an action arising from the death of a tenant in one of defendant's apartments, the trial court erred by directing a verdict for defendant on plaintiff's

claim for breach of the implied warranty of habitability. A landlord impliedly warrants to his tenant that leased or rented residential premises are fit for human habitation, at least to the extent of being free from observable conditions that render the premises unsafe or unsanitary. G.S. 42-38 *et seq.*

**4. Appeal and Error § 24— wrongful death of tenant—breach of contract—issue not available on appeal**

In an action for the wrongful death of a tenant in which the court did not mention plaintiff's claim for breach of contract in any of its directed verdict entries, plaintiff could not assert its claim on appeal because she did not question the court about the breach of contract claim, make it the point of a specific exception or seek any post-trial relief relative to it. Rule 10(a), N.C. Rules of Appellate Procedure.

**5. Negligence § 50.1; Landlord and Tenant § 8.3— wrongful death of tenant— strict liability—directed verdict for defendant proper**

In an action arising from the death of a tenant in one of defendant's apartments, possibly caused by a blocked heater flue, directed verdict for defendant was proper on plaintiff's strict liability claim because violations of G.S. 42-38 *et seq.* are but evidence of negligence, and heating an apartment house with gas is not an ultrahazardous activity for which the owner is strictly liable without cause.

Judge WEBB dissenting.

APPEAL by plaintiff from *Washington, Judge*. Judgment entered 23 November 1982 in Superior Court, GUILFORD County. Heard in the Court of Appeals 23 August 1984.

This action is for the wrongful death of Mary Magdalene Jackson, who died from carbon monoxide poisoning on 19 February 1978 while residing in the Clara Cox Apartments, a low-income housing project that the defendant had owned and operated for several years. Mary Magdalene Jackson had rented and occupied an apartment in the project since 1973, and the carbon monoxide that killed her, so the complaint alleged, was funneled into her apartment from a natural gas heater whose flue was clogged by a dead pigeon and other debris.

The defendant's liability is predicated on several different grounds asserted in five causes of action set forth in the complaint as amended. In the first cause, based on negligence, it is alleged that defendant carelessly failed to maintain the heater and flue in a proper and safe manner. In the second cause, based on strict liability, it is alleged that (a) defendant violated certain safety warranties in the lease agreement, and (b) the gas heater

was inherently dangerous. In the third cause, based on breach of contract, it is alleged that defendant's failure to maintain the heater in a safe condition violated their lease agreement. In the fourth and fifth causes, each of which is based on both breach of warranty and strict liability, it is alleged that the heater was not fit for its intended purpose. In each of the five causes of action, based on allegations that defendant's neglect, breach or other default was either gross, wanton, wilful, or intentional, it is claimed that punitive, as well as compensatory, damages should be awarded. In answering the complaint defendant admitted the landlord-tenant relationship and the intestate's death, but denied the other material allegations and asserted in defense that Mary Magdalene Jackson was contributorily negligent in operating the heater. Prior to trial, pursuant to the provisions of Rule 12(b)(6) of the N.C. Rules of Civil Procedure, the court entered an order dismissing all of plaintiff's claims for punitive damages. At trial at the close of plaintiff's evidence a directed verdict was entered against all of plaintiff's causes of action except the one based on ordinary negligence; and at the close of all the evidence that claim was dismissed, as well.

Briefly summarized, plaintiff's evidence tended to show that: Mrs. Jackson was asphyxiated in her apartment by carbon monoxide poisoning on 19 February 1978. Her body, laying on the bed, was found that day by her granddaughter-in-law. At that time Mrs. Jackson's bed was not wet and though it was a cold day the windows in the apartment were in normal condition and no water was running down them. Shortly after Mrs. Jackson's death was discovered officials of the defendant Authority, the City of High Point, and the natural gas supplier dismantled the chimney flue to Mrs. Jackson's heater and found a dead pigeon, a bird's nest, and other debris blocking the chimney pipe. Expert witnesses testified that such debris could cause carbon monoxide fumes generated by a natural gas heater to back up into the heated structure and that carbon monoxide can be lethal and is most difficult to detect, since it is both odorless and colorless. A police officer who participated in the initial investigation testified that after being in Mrs. Jackson's apartment for about two hours, he experienced symptoms of carbon monoxide poisoning. More than a year before Mrs. Jackson's death three other residents of the Clara Cox Apartments died of carbon monoxide poisoning when the chimney

flue for their apartment gas heater became clogged by a dead bird and other debris. This incident and its cause was immediately learned of by defendant's officials, who had all the heating systems in the apartment project inspected by the City of High Point's mechanical inspector. During the course of that inspection dead pigeons, nests, and other debris were discovered in other chimney flues and the inspector recommended, among other things, that defendant cap or screen the chimney tops to prevent such blockages in the future. Defendant's work order dated 1 February 1978, one of plaintiff's exhibits, indicates that Mrs. Jackson's heater was discharging smoke and soot into the apartment due to a blocked air vent; and while the exhibit does not positively state that the vent was opened, it indicates that the work requested was done. The cross-examination of one of defendant's witnesses revealed that the chimneys of the Clara Cox Apartments were capped after Mrs. Jackson's death, and that the caps used were available before she died.

Defendant's evidence, in addition to showing many of the basic facts as plaintiff's evidence, tended to show the following: Though an inspection of the apartment after Mrs. Jackson's death revealed that the chimney was blocked, the heater was operating properly and burning cleanly. An expert witness testified that a properly operating gas furnace of the type involved produces little or no carbon monoxide and that a blocked chimney flue would not affect its operation. The investigating police officer testified that when he entered the apartment, immediately after being notified of Mrs. Jackson's death, the temperature was extremely high, all four eyes of the gas-fueled cooking stove were on, and the gas-fueled oven was also on and its door was open. Defendant's employees inspected the apartments semi-annually and handled interim calls for maintenance or service as they were received. The heaters were cleaned and prepared for winter use in the fall. Following the 1977 spring inspection it was recommended that the vent pipes be replaced with piping of a higher grade and insulating mats be installed under each heater. These changes were made in due course, and those made in Mrs. Jackson's apartment were inspected and found to be satisfactory. On 10 January 1978, a semi-annual inspection of Mrs. Jackson's apartment was done and a visual examination of her heater revealed no apparent problem. Mrs. Jackson's heater was last inspected on

14 February 1978 after the insulating mat was installed. The fuel supply line was also checked for leaks at that time, but none were found.

*Kennedy, Kennedy, Kennedy and Kennedy, by Annie Brown Kennedy, Harvey L. Kennedy, and Harold L. Kennedy, III, for plaintiff appellant.*

*Henson & Henson, by Perry C. Henson and Jack B. Bayliss, Jr., for defendant appellee.*

PHILLIPS, Judge.

[1] Plaintiff first contends that the trial court erred in directing a verdict against her on the ordinary negligence claim at the close of all the evidence. We agree. In directing a verdict on this claim the court did not specify what the perceived weakness in plaintiff's case was and we will briefly address the possibilities that the record suggests. Certainly the claim is not barred because of defendant's status as an arm of the City of High Point in operating a low income housing project; such activities are proprietary, rather than governmental, and municipalities are legally accountable therefor on the same basis as other defendants. *Sides v. Cabarrus Memorial Hospital, Inc.,* 287 N.C. 14, 213 S.E. 2d 297 (1975); *Carter v. City of Greensboro,* 249 N.C. 328, 106 S.E. 2d 564 (1959). Nor was the claim dismissable because evidence of defendant's negligence was lacking. Defendant clearly had a duty to maintain the flue of the gas heater in Mrs. Jackson's apartment in a safe condition, and viewed favorably for the plaintiff, as the law requires, the evidence in our opinion was sufficient to support the inference that decedent's death proximately resulted from the defendant's failure to exercise due care in preventing the flue from becoming clogged by dead birds and other debris. The evidence shows that though defendant became aware of this lethal hazard to its tenants more than a year earlier when three other tenants died from carbon monoxide poisoning due to a heater flue becoming clogged by dead birds and other debris, it nevertheless took no steps to prevent the flue in Mrs. Jackson's apartment from being clogged by the same means. Nor was the claim dismissable on the grounds of Mrs. Jackson's contributory negligence; while the evidence tends to support defendant's claim that she was contributorily negligent, that is not the only reasonable inference

that can be drawn from it, and the issue is thus one of fact for the jury. *Lenz v. Ridgewood Associates,* 55 N.C. App. 115, 284 S.E. 2d 702 (1981), *disc. rev. denied,* 305 N.C. 300, 290 S.E. 2d 702 (1982). But contrary to plaintiff's contention the evidence presented does not give rise to the doctrine of *res ipsa loquitur* for several reasons. *See, McPherson v. High Point Memorial Hospital, Inc.,* 43 N.C. App. 164, 258 S.E. 2d 410 (1979).

Defendant's negligence is also inferable on the grounds that the evidence presented tends to show that its failure to maintain the heater flue in a safe condition violated certain statutes and a local ordinance pertaining to the maintenance of housing that is rented to others. A statute or ordinance designed for the protection of the public is a "safety" enactment and its violation constitutes negligence *per se,* unless the legislative body provides otherwise; and where a statute or ordinance is not a "safety" enactment but sets a standard of conduct, its violation may be evidence of negligence. *Gore v. Ball, Inc.,* 279 N.C. 192, 182 S.E. 2d 389 (1971).

One statute that defendant may have violated, according to the evidence, is G.S. 42-42, which is part of the Residential Rental Agreements Act, and in pertinent part provides as follows:

(a) The landlord shall:

> (2) Make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition;

>     . . . .

> (4) Maintain in good and safe working order and promptly repair all electrical, plumbing, sanitary, heating, ventilating, air conditioning, and other facilities and appliances supplied or required to be supplied by him provided that notification of needed repairs is made to the landlord in writing by the tenant except in emergency situations.

Whether this is a "safety statute," as it certainly appears to be, need not be discussed, since the General Assembly expressly provided in G.S. 42-44(d) that violations of it are not negligence *per se*; but as this Court has held, violations of G.S. 42-42 are evidence of negligence. *Brooks v. Francis,* 57 N.C. App. 556, 291 S.E. 2d 889 (1982).

Another statute defendant may have violated, according to the evidence, is G.S. 160A-425, a part of Part 5, Article 19 of Chapter 160A, which makes it the responsibility of municipalities to inspect buildings within their boundaries for hazardous conditions and makes it the responsibility of the owners of inspected buildings to eliminate the hazards reported to them. The statute reads as follows:

> When a local inspector finds any defects in a building, or finds that the building has not been constructed in accordance with the applicable State and local laws, or that a building because of its condition *is dangerous* or contains fire hazardous conditions, it shall be his duty to notify the owner or occupant of the building of its defects, hazardous conditions, or failure to comply with law. *The owner or occupant shall each immediately remedy the defects, hazardous conditions, or violations of law in the property he owns.* (Emphasis supplied.)

Since the obvious purpose of this statute is to protect the lives and limbs of occupants of the buildings affected, and the legislature has not provided otherwise, violations of it are negligence *per se. See, Lutz Industries, Inc. v. Dixie Home Stores*, 242 N.C. 332, 88 S.E. 2d 333 (1955). The evidence presented in this case tends to show that defendant violated this statute by failing to take effective measures to prevent the flue in Mrs. Jackson's apartment from becoming clogged after the City's inspector notified it more than a year earlier that a similar flue in another apartment had become clogged with dead birds and other debris and caused the deaths of three tenants.

Still another enactment that defendant may have violated according to the evidence is Section 9-1-79 of the High Point Ordinances, which in pertinent part provides as follows:

> The following shall constitute the minimum standards and requirements for residential buildings and shall be pertinent in determining fitness for human habitation.
>
> . . . .
>
> (5) Heating requirements.
>
> a. Every building and every dwelling unit shall be weatherproof and capable of being adequately heated. The heating

equipment in every dwelling unit shall be maintained in a safe workable condition.

b. Heating system, if provided, shall be properly installed and maintained in safe working condition.

Clearly, this ordinance is also designed to promote the safety of the general public and a violation of it is negligence *per se. Bell v. Page*, 271 N.C. 396, 156 S.E. 2d 711 (1967). Whether the defendant violated any of these enactments is, of course, for a jury to say; but if a jury should find that defendant violated either the above ordinance or G.S. 160A-425, its negligence would be established, subject of course to it also being found that Mrs. Jackson's death proximately resulted from the violation. A violation of G.S. 42-42, however, if such should be found, would only be evidence of negligence.

[2] The court dismissed plaintiff's claim for punitive damages on the pleadings and later directed a verdict against plaintiff on the claim of "malicious, wilful or wanton injury, or gross negligence." The directed verdict would seem to be redundant, but plaintiff contends both actions by the court were error and we will discuss them together. The question presented, one of first impression in this state so far as our research discloses, is whether punitive damages can be recovered from a municipal corporation in a wrongful death case. It is our opinion that such damages are recoverable in an appropriate case and that the court erred in its rulings to the contrary.

It is true, though, that traditionally municipal corporations have been exonerated from liability for punitive damages in personal injury cases on the grounds of public policy. 18 McQuillin *Municipal Corporations* Sec. 53.18a (3d ed. 1977 & Supp. 1983); Annotation, 1 A.L.R. 4th 448 (1980). And with regard thereto, our Supreme Court has said:

> We believe that public policy considerations mitigating against allowing assessment of punitive damages are compelling and are applicable to the actions of municipal corporations *without regard to whether the function is governmental or proprietary.* We hold that in the absence of statutory provisions to the contrary, municipal corporations are immune from punitive damages.

*Long v. City of Charlotte*, 306 N.C. 187, 208, 293 S.E. 2d 101, 114-115 (1982). But, of course, municipal immunity is rooted in the common law, Comment, *Local Government Sovereign Immunity: The Need for Reform*, 18 Wake Forest L. Rev. 43 (1982), whereas the right to sue for wrongful death in this state did not exist at common law and was created by statute. *Stetson v. Easterling*, 274 N.C. 152, 161 S.E. 2d 531 (1968). As to the damages that may be recovered in a wrongful death action, G.S. 28A-18-2 provides, in pertinent part:

(b) Damages recoverable for death by wrongful act include:

. . . .

(5) Such *punitive damages* as the decedent could have recovered had he survived, *and punitive damages for wrongfully causing the death of the decedent through maliciousness, wilful or wanton injury, or gross negligence* . . . (Emphasis supplied.)

Thus, that in this state punitive damages are generally recoverable in an appropriate wrongful death case is plain. It is also plain that no proviso in our Wrongful Death Act or elsewhere in the General Statutes specially exempts municipalities from such liability. This leads us inevitably to the conclusion that punitive damages are recoverable from municipalities in wrongful death cases on the same basis as from other tort feasors. The plain, positive provisions of the statute contain no basis for supposing that the legislature intended to exempt municipalities therefrom. Furthermore, if the statutory language was thought to be ambiguous and it was deemed appropriate to determine what the legislature's intentions were, we would hesitate to conclude that it intended to deny occupants of city-operated public housing, who are mostly poor and disadvantaged, the same recovery that is available to those renting from private landlords. Such a policy would be grossly discriminatory on its face, *Arlington Heights v. Metropolitan Housing Corp.*, 429 U.S. 252, 50 L.Ed. 2d 450, 97 S.Ct. 555 (1977); *Housing for All Under Law*, 1978 A.B.A. Advisory Commission on Housing and Urb. Growth Rep. 142-43; 415-416 (R. Fishman ed.), and should not be attributed to the General Assembly without good reason, which their enactments do not contain. As the Iowa Supreme Court observed in a similar case, if the legislature had intended to exempt municipal corpora-

tions from liability for punitive damages in wrongful death cases it could have easily done so. *Young v. City of Des Moines*, 262 N.W. 2d 612, 1 A.L.R. 4th 431 (Iowa 1978).

**[3]** We turn now to plaintiff's contentions that the trial court erroneously directed a verdict for defendant on the breach of implied warranty, breach of contract, and strict liability claims. We find merit in plaintiff's contention regarding the implied warranty of habitability claim. *Javins v. First National Realty Corp.*, 428 F. 2d 1071 (D.C. Cir.), *cert. denied*, 400 U.S. 925, 27 L.Ed. 2d 185, 91 S.Ct. 186 (1970), cited by plaintiff, stands for the proposition that a landlord impliedly warrants to his tenant that leased or rented residential premises are fit for human habitation, at least to the extent of being free from observable conditions that render the premises unsafe or unsanitary. *Javins* further requires that applicable housing codes be read into the housing contract or lease agreement and made part of the implied warranty. But resort to federal law is unnecessary. Our Residential Rental Agreements Act, G.S. 42-38 *et seq.*, codifies the essential points in *Javins. See,* G.S. 42-42. Thus, to the extent that any implied warranty may be said to exist, it is co-extensive with the Residential Rental Agreements Act; and as discussed above, violations of the Act, while not negligence *per se*, are evidence of negligence. *Brooks v. Francis*, 57 N.C. App. 556, 291 S.E. 2d 889 (1982).

**[4]** With respect to the breach of contract claim plaintiff argues only that the trial court never disposed of it, and it is true that this claim was not mentioned by the court in any of its directed verdict entries. Nevertheless, this argument is without merit. As defendant points out, the record and transcript show that after the court entered the partial directed verdict at the close of plaintiff's evidence the trial proceeded on the negligence issue alone, and plaintiff failed to either question the court about the contract claim or make it the point of a specific exception or seek any post-trial relief relative to it. Having failed to call this alleged error to the court's attention, it may not be asserted now. Rule 10(a), N.C. Rules of Appellate Procedure.

**[5]** With respect to the directed verdict on the strict liability claim, plaintiff argues that defendant is strictly liable because (1) it violated the implied warranties of habitability and fitness for a particular purpose; and (2) the maintenance of the gas heater was

an ultrahazardous activity. This argument is without merit. A landlord's liability in this state for breach of warranty to his tenant is not governed by the doctrine of strict liability, but by the Residential Rental Agreements Act, G.S. 42-38 *et seq.*, violations of which are but evidence of negligence, as heretofore noted. Nor is heating an apartment house or other dwelling with gas, an activity safely engaged in by millions for generations, an ultrahazardous activity such as blasting with high explosives, for which the owner is strictly liable without regard to fault. *Trull v. Carolina-Virginia Well Co.*, 264 N.C. 687, 142 S.E. 2d 622 (1965).

Plaintiff also contends that the trial court erred in refusing to allow two of her witnesses to testify as experts on certain issues. Since these questions are not essential to a disposition of the appeal and may not arise at the next trial we shall not discuss them. We do commend to the trial court, however, our opinion in the recent case of *Powell v. Parker*, 62 N.C. App. 465, 303 S.E. 2d 226, *disc. rev. denied*, 309 N.C. 322, 307 S.E. 2d 166 (1983). In that case, similar questions relating to the qualifications of expert witnesses and the use of hypothetical testimony were considered. We also point out that the hypothetical question is no longer required for expert testimony in this state. G.S. 8-58.12.

Pointing out that the compensatory damages issue, which the trial court did not rule on in dismissing the various claims, could involve some very difficult problems, indeed, plaintiff asks that we expedite the re-trial by ruling on these questions now. Though plaintiff's concern is not without basis we nevertheless decline the invitation. Our role is to review rulings made by trial courts, rather than chart the course of trials yet to be conducted; too, the effort could be wasted since it is uncertain how the next trial will develop.

As to the dismissal of plaintiff's claim based on negligence — reversed.

As to the dismissal of plaintiff's claim for punitive damages — reversed.

As to the dismissal of plaintiff's claim based on implied warranty — reversed.

As to the dismissal of plaintiff's claim based on strict liability — affirmed.

---
**Harbach v. Lain and Keonig**
---

As to the dismissal of plaintiff's claim based on contract — affirmed.

Reversed in part; affirmed in part; new trial.

Judge JOHNSON concurs.

Judge WEBB dissents.

Judge WEBB dissenting.

I dissent from that part of the majority opinion which holds it was error to dismiss plaintiff's claim for punitive damages. I do not believe we have to decide whether punitive damages may be had in a wrongful death claim against a municipal corporation. We do not reach that question because there is not sufficient evidence for the jury to find maliciousness, wilfulness, wantonness or gross negligence. Without this evidence the question of punitive damages does not arise. I concur in the rest of the opinion.