ALBERT W. BRITT v. CITY OF WILMINGTON, A MUNICIPAL CORPORATION, AND E. L. WHITE, MAYOR AND COUNCILMAN, AND J. E. L. WADE, W. RONALD LANE, E. S. CAPPS AND W. GORDON DORAN, AS MEMBERS OF THE CITY COUNCIL OF THE CITY OF WILMINGTON.

(Filed 19 November, 1952.)

**1. Actions § 3a—**

An action to determine the right of a municipality to issue certain bonds will be treated as an adversary proceeding and will be decided irrespective of any stipulations of legal conclusions by the parties, since in no event could plaintiff taxpayer stipulate away the rights of all the taxpayers of the municipality.

**2. Taxation § ½—**

A municipality may pledge the revenues from a proper proprietary undertaking to the payment of bonds issued in connection therewith, since in such instance no debt is incurred within the meaning of the Constitution. G.S. 160, Art. 33.

**3. Municipal Corporations § 5—**

A municipal corporation exercises two classes of powers, one governmental as an agency of the State and the other proprietary as a private corporation.

**4. Municipal Corporations § 7a—**

Any activity of a municipality which is discretionary, political, or legislative and undertaken in behalf of the State in promoting or protecting the public health, safety, security, or general welfare, is a governmental function.

**5. Municipal Corporations § 8a—**

Any activity of a municipality which is commercial or chiefly for the private advantage of the compact community, is a proprietary function, but even a private or proprietary function of a municipality must be for a public purpose and at least incidentally promote the general health, safety, security, or general welfare of its residents.

**6. Municipal Corporations § 38½—**

> A municipality has no authority to charge a fee or toll for the parking of vehicles upon its streets or to lease or let its system of on-street parking meters for operation by a private corporation or individual. It may not pledge revenue derived from on-street meters to the payment of proposed bonds for off-street parking arrangements, or consolidate into one project on-street and off-street parking. G.S. 160-414 (d) and G.S. 160-415 (g) as they relate to on-street parking are void.

**7. Same—**

> On-street parking meters are maintained by a municipality in the exercise of its governmental powers in the regulation of traffic on its streets, and the requirement of the deposit of a coin is in the nature of a tax and is not a fee or toll but simply the method for putting the meter into operation, and the revenue therefrom must be set apart and used for expenses incurred in the regulation and limitation of vehicular traffic on its streets. G.S. 160-200(31).

**8. Same—**

> The regulations of a municipality for off-street parking meters maintained by it in its proprietary capacity may not be enforced by criminal prosecutions.

**9. Municipal Corporations § 36—**

> A municipality may not bind itself to enact or enforce on-street and off-street parking regulations by penal ordinance for the period during which bonds issued to provide off-street parking facilities should be outstanding, since it may not contract away or bind itself in regard to its freedom to enact governmental regulations.

APPEAL by plaintiff from *Burney, Resident Judge,* in Chambers, at Wilmington, N. C., 16 August, 1952, NEW HANOVER.   Reversed.

Civil action to restrain the issuance of parking facilities revenue bonds and the appropriation of revenue derived from on-street parking meters for the payment thereof.

The City of Wilmington now maintains 631 parking meters located near the curbs of its streets in areas congested by traffic.   At the time a motorist parks in a meter zone he is required to activate the meter set opposite the space in which he parks by depositing a coin therein.   This system of traffic control will hereafter be referred to as on-street parking facilities or on-street parking meters.

It now plans to acquire private property to be converted into a parking area or lot for sixty automobiles.   The plan contemplates a charge of five cents per half hour or ten cents per hour for a total of not more than eighteen consecutive hours.   The "rates, fees, tolls, or charges for the . . . (parking) facilities" thus furnished by the city are to be collected through the medium of parking meters.   This plan will hereafter be referred to as off-street parking facilities.

The city now collects from its on-street parking facilities an average of more than $46,400 per year. It estimates that it will collect through the off-street meters more than $11,200 per year which will be sufficient to pay the estimated cost of maintenance and repair, the installments of principal and interest maturing annully on the proposed revenue bonds, and leave a net balance of $3,640 per year.

The city proposes to issue revenue bonds in the sum of $110,000 as authorized by General Statutes Ch. 160, subchapter IV, Art. 33, the proceeds of which are to be used in acquiring the necessary land, materials, and other equipment and paying the expenses necessary to put the property in condition for operation as a parking lot. Under the terms of the resolution adopted in furtherance of this proposal "they propose to collect and set aside the revenues of the on-street parking meters in the City and of off-street parking facilities as provided in the Resolution . . ." (Answer) for the payment of said bonds and interest thereon. The resolution provides for a sinking fund and stipulates the conditions upon which on-street meter revenues are to be transferred from the general fund to the sinking fund and the amounts of such transfers. The details are not material here. The resolution declares that the traffic conditions in congested areas of the city caused by the parking of automobiles "endangers the health, safety and welfare of the general public" and has created "a public nuisance" that can be abated only by adequate off-street parking facilities which have become "a public necessity." It provides further that it is necessary and advisable to combine the on-street and the proposed off-street facilities "into a single undertaking for financing purposes and for the more adequate regulation of traffic and relief of congestion."

In the resolution the city makes certain covenants including covenants that it will (1) install parking meters in the parking lot including parking meters for any additional off-street parking facilities or enlargements, improvements, or extensions of off-street parking facilities for which revenue bonds may hereafter be issued, and (2) adopt and maintain in force an ordinance or ordinances making applicable to the off-street parking facilities the provisions of the ordinances of the city governing motor vehicles and traffic which relate to the regulation, control, operation, and use of on-street parking meters and penalties for the violation of such provisions.

Pursuant to said covenants the city board has adopted an ordinance which provides (1) that the parking meters installed on the parking lot shall be operated from 6:00 a.m. to 12 midnight every day including Sundays and holidays, and (2) each person parking a vehicle in a space within said parking lot be required to deposit five cents for each half hour or ten cents for each hour such vehicle is parked, not to exceed eighteen

consecutive hours. In section 2 of the ordinance it is made unlawful for "any person to cause, allow or permit any vehicle registered in his name or which vehicle is under his control to be or remain parked in any off-street parking space for which a parking meter has been provided for any period of time for which any required deposit in the parking meter shall not have been made."

The court below concluded that the proposed plan for issuing revenue bonds is in all respects regular and valid and entered judgment denying injunctive relief. Plaintiff excepted and appealed.

*McClelland & Burney for plaintiff appellant.*
*Wm. B. Campbell for defendant appellees.*

BARNHILL, J. The record before us generates some doubt as to whether this action is a *bona fide* adversary proceeding. While plaintiff alleges that the parking facilities the defendant proposes to furnish motorists are not "for a proper public purpose or for the general welfare and benefit of the City and its inhabitants, but are for the private benefit of the users of such facilities," he stipulates in part that traffic congestion on the streets of Wilmington has reached the point that it creates a public nuisance and "this traffic congestion is not capable of being adequately abated except by provision for sufficient off-street parking facilities; adequate off-street parking facilities have not been provided and parking spaces now existing must be forthwith supplemented by off-street parking facilities provided by public undertaking; and the provision of such off-street parking facilities is a public necessity."

Thus it would seem that the parties to the action are seeking the same end—the approval by this Court of the proposed bond issue. If such is the case—and we do not so assert—we could not permit a single resident of defendant city to stipulate away the rights of all the taxpayers of the municipality. Instead, we shall decide the questions of law posed for decision upon the assumption they are presented in good faith upon the essential facts appearing of record, unhampered by stipulations of legal conclusions.

The authority of the defendant city to issue and market the proposed off-street parking facilities revenue bonds under the terms of the resolution adopted by its governing board rests upon the validity of certain stipulations and covenants contained in the bond resolution and of the enforcement ordinance adopted pursuant thereto. The plaintiff in his complaint attacks the right of the defendant city to (1) pledge the revenue derived from the off-street parking facilities to the payment of said bonds, (2) pledge revenue derived from the on-street meters to the payment of the proposed bonds, (3) consolidate into one project the on-street and

off-street parking arrangements, and (4) maintain, and enforce by criminal prosecution, the ordinance adopted by the governing body of defendant regulating the operation of the off-street parking facilities.

We may concede, without deciding, that the proposed off-street parking undertaking is for a public purpose and is a proper municipal objective within the defendant's proprietary powers. If that be true, then, of course, the defendant has the power to pledge the revenues derived from the off-street parking facilities to the payment of the proposed revenue bonds. The very purpose of the Revenue Bond Act, General Statutes Ch. 160, Art. 33, is to permit municipalities to engage in nongovernmental activities of a public nature by pledging the revenue derived from such undertakings to the payment of bonds issued in connection therewith. Thus it avoids pledging the credit of the municipality to the payment of a debt, for by such arrangements no debt is incurred within the meaning of the Constitution.

We deem it necessary therefore to discuss only two questions raised by plaintiff: The right of defendant (1) to pledge revenue derived from the on-street parking facilities to the payment of the proposed revenue bonds, and (2) to enforce by criminal prosecution the provisions of its ordinance regulating parking in the off-street parking lot.

A municipal corporation is dual in character and exercises two classes of powers—governmental and proprietary. It has a twofold existence—one as a governmental agency, the other as a private corporation.

Any activity of the municipality which is discretionary, political, legislative, or public in nature and performed for the public good in behalf of the State rather than for itself comes within the class of governmental functions. When, however, the activity is commercial or chiefly for the private advantage of the compact community, it is private or proprietary. *Millar v. Wilson,* 222 N.C. 340, 23 S.E. 2d 42.

A municipal corporation cannot, even with express legislative sanction, engage in any private enterprise or assume any function which is not in a legal sense public in nature, the word "private" as used in opinions discussing the powers of a municipality being used to designate proprietary, as distinguished from governmental, functions. *Brown v. Comrs. of Richmond County,* 223 N.C. 744, 28 S.E. 2d 104; *Kennerly v. Dallas,* 215 N.C. 532, 2 S.E. 2d 538; *Williamson v. High Point,* 213 N.C. 96, 195 S.E. 90; *Nash v. Tarboro,* 227 N.C. 283, 42 S.E. 2d 209; 5 McQuillin Mun. Corp., Rev. Ed. 1278; 37 A.J. 734.

When a municipality is acting "in behalf of the State" in promoting or protecting the health, safety, security, or general welfare of its citizens, it is an agency of the sovereign. When it engages in a public enterprise essentially for the benefit of the compact community, it is acting within

its proprietary powers. In either event it must be for a public purpose or public use.

So then, generally speaking, the distinction is this: If the undertaking of the municipality is one in which only a governmental agency could engage, it is governmental in nature. It is proprietary and "private" when any corporation, individual, or group of individuals could do the same thing. Since, in either event, the undertaking must be for a public purpose, any proprietary enterprise must, of necessity, at least incidentally promote or protect the general health, safety, security or general welfare of the residents of the municipality. *Nash v. Tarboro, supra.*

It follows that the mere fact the off-street parking facilities defendant proposes to install tend to promote the safety, convenience, or general welfare of its citizens is not determinative.

The defendant is proceeding under the provisions of the statute known as the Revenue Bond Act of 1938, now General Statutes, Ch. 160, Art. 34. This Act was amended in 1951, Ch. 703, S.L. 1951, so as to include "parking facilities" as one of the "undertakings" a city is authorized to finance by the issuance of revenue bonds, that is, bonds which are to be paid, both as to principal and interest, solely out of the revenue derived from the operation of the enterprise.

An examination of this Act makes it clearly appear that the parking facilities undertaking therein authorized is commercial in nature. The city is empowered to charge rates, fees, tolls, or charges for the facilities furnished—to "impose such charges in connection with any such parking meters . . . as it may deem advisable . . ." The off-street parking facilities are to be "open to public use for a fee." The property and parking facilities may, in the discretion of the governing board, be leased to individuals. The revenue derived from the imposition of the charges, rates, fees, and tolls is to be used to pay the principal and interest on the revenue bonds issued to finance the project.

The facts appearing of record fortify this conclusion. It is contemplated that the off-street parking project will produce revenue sufficient to pay all expenses of operation, maintenance, and repair, the installments of principal and interest on the bonds as they mature and still leave a net annual profit of over $3,000. The bonds are to be paid in full over a period of twenty-five years. Thus the city will have accumulated at the end of twenty-five years an additional profit of $110,000.

Moreover, the "undertaking" is an enterprise or business in which any corporation or individual is privileged to engage. Indeed, off-street parking facilities provided for the motoring public by private enterprise were a well-known feature of the American scene long before the idea of municipally owned and operated parking lots was conceived.

The Act, G.S. 160-414 (d) and 415 (g), as it relates to on-street parking is void. Streets of a municipality are provided for public use. A city board has no valid authority to rent, lease or let a parking space on the streets to an individual motorist "for a fee" or to charge a rate or toll therefor. Much less may it lease or let the whole system of on-street parking meters for operation by a private corporation or individual. *S. v. Scoggin,* 236 N.C. 1. Nor can G.S. Ch. 160, Art. 39, offer defendant any comfort, for the provisions of that Act are to like effect.

If the defendant installed its on-street parking meters, as we assume, under the provisions and pursuant to the authority contained in G.S. 160-200 (31), then it was acting within its authority as a governmental agency. The deposit of a coin by a motorist at the time of parking, to activate the meter, is not a fee or charge or toll for using the parking space. It is simply the method adopted by the governing authorities of the city for putting the meter in operation. *S. v. Scoggin, supra.* The revenue derived therefrom is expressly set apart and dedicated to a particular use by the Legislature in the Act granting authority to municipalities to regulate parking in areas congested by motor traffic by the use of parking meters. G.S. 160-200 (31). "The proceeds derived from the use of such parking meters shall be used exclusively for the purpose of making such (parking) regulation effective and for the expenses incurred by the city or town in the regulation and limitation of vehicular parking, and traffic relating to such parking, *on the streets and highways of said cities and towns."* (Italics supplied.)

In this connection it is interesting to note that the Legislature in the same section authorizes the acquisition and operation of off-street parking lots and a charge for the use thereof. Thus it appears the Legislature had clearly in mind the difference between governmental and proprietary functions of a municipality.

The revenue derived from the on-street parking facilities is exacted in the performance of a governmental function. It must be set apart and used for a specific purpose. By whatever name called, it is in the nature of a tax. *Unemployment Compensation Com. v. Trust Co.,* 215 N.C. 491, 2 S.E. 2d 592.

> "What's in a name? That which we call a rose
> By any other name would smell as sweet."

It follows that the on-street and off-street parking facilities may not be combined and operated as one undertaking. Nor may the "deposits" made in the on-street meters be pledged to secure, or be applied to, the payment of the revenue parking facilities bonds the defendant proposes to issue.

The ordinance adopted by the governing board of defendant city in compliance with the covenant contained in the resolution authorizing the issuance of the proposed bonds provides that the meters to be installed in the off-street parking lot shall be operated each day from 6:00 a.m. to 12 midnight and that: "Each person parking a vehicle in space for which a parking meter has been provided during the period of time mentioned is hereby required to deposit in such parking meter five cents for each half hour or ten cents for each hour such vehicle is so parked; provided, that no vehicle shall be parked in the same space for more than eighteen consecutive hours." It further provides that it shall be unlawful for any person to allow or permit a vehicle registered in his name or under his control to "remain parked in any off-street parking space . . . for any period of time for which any required deposit in the parking meter shall not have been made." It expressly recites that it is adopted pursuant to the bond resolution which provides for "the fixing and collecting of rents, fees and charges for the use of such facilities . . ." A penalty is provided for the violation of any section of the ordinance.

Thus the length of time a motorist may park in a space set apart for that purpose in the off-street parking lot depends upon the amount of money deposited in the meter. The ordinance is not uniform in its application. One person may be prosecuted for leaving his vehicle parked for more than thirty minutes while another may lawfully park for eighteen consecutive hours, and there are thirty-four "periods of lawful parking" intervening between the half-hour and the eighteen hour periods. Uniformity of burden and of privilege is completely lacking. *S. v. Scoggin, supra.*

The criminal processes of the State are available to a city or town only for the better enforcement of the criminal law and police regulations adopted in furtherance of its functions as a governmental agency of the State. A regulation adopted in connection with and in furtherance of an undertaking which is purely proprietary in nature may not be enforced by criminal prosecution. Furthermore, the governing board of a municipality may not bind itself to enact, and the municipality to maintain for twenty-five years, a regulatory ordinance pertaining to the governmental functions of the city. It cannot thus farm out its legislative functions or delegate to private individuals the right to determine whether and to what extent one of its police regulations may be amended.

Even if we pass without notice the absence of any declaration that public convenience demands the regulation therein contained, it is quite apparent that public convenience was not the dominant motivating reason for its adoption. It cannot reasonably be said that it tends to promote the rapid turnover of parking in congested areas. Sixty persons could lawfully monopolize the whole lot for a period of eighteen hours. Hence

the proposed undertaking is little more than a provision for the storage of motor vehicles. Therefore, the penal provisions of the ordinance may not be sustained as a proper exercise of the police power of the city.

We have reached our conclusions after a careful examination of the authorities cited by defendant. Most, if not all, of them are distinguishable by reason of the local statutes or the contents of the bond resolutions and ordinances or the factual situations. Off-street parking facilities financed and maintained by the public are of modern origin. The law pertaining to the establishment of such facilities by cities and towns is in a state of flux. The courts of a state must decide questions relating thereto in accord with local statutes and the facts in the particular case. It is natural, therefore, that there should be, at this time, a conflict of opinion. Anno. 8 A.L.R. 2d 375. No doubt, as has so often happened in the past in respect to other questions, there will be a gradual drift of judicial opinion and legislative enactment towards uniformity until the law will become substantially the same in all American jurisdictions. Such is the history of the growth of the law.

It must not be understood that we are presently holding that off-street parking facilities established in accord with our statutes are not for a public purpose or that parking facilities revenue bonds may not be issued to finance the same. We are deciding the questions presented on the record before us without undertaking to anticipate somewhat similar questions which may be presented in the future. See Anno. 8 A.L.R. 2d 375.

For the reasons stated the judgment entered in the court below is
Reversed.