ANDRE L. HICKMAN, A Minor by his Guardian Ad Litem, T. DANIEL
WOMBLE, Plaintiff v. DERRICK MONTRIC FUQUA, HELEN W.
NICHOLS, Individually and D/B/A TINY TIM NURSERY AND
KINDERGARTEN, CITY OF WINSTON-SALEM, WINSTON-SALEM TEN-
NIS INC., DAVID L. LASH, Defendants

WILLIAM L. HICKMAN and wife, ROSLYN R. HICKMAN, Plaintiffs v. DER-
RICK MONTRIC FUQUA, HELEN W. NICHOLS, Individually and D/B/A
TINY TIM NURSERY AND KINDERGARTEN, CITY OF WINSTON-SALEM,
WINSTON-SALEM TENNIS INC., DAVID L. LASH, Defendants

No. 9121SC804

(Filed 17 November 1992)

**Municipal Corporations § 12 (NCI3d)— governmental immunity—
municipal tennis program—governmental activity**

The trial court erred by denying defendant City's motion
for summary judgment based on governmental immunity where
plaintiff Hickman was injured while crossing the street after
attending a free tennis clinic offered by defendant City and
a private nonprofit corporation at high school tennis courts
adjacent to a public park. The City did not waive its immunity
by organizing a corporation to handle liability claims of
$1,000,000 or less; although other unrelated tennis offerings
produce revenue for the City, there was absolutely no charge
involved in this clinic; there is no evidence of revenue generated
at the high school courts, which were merely leased by the
City; and it is irrelevant that the courts are adjacent to a
public park. Moreover, the profit motive is not the sole deter-
minative factor in deciding whether an activity is governmen-
tal or proprietary; the City's sponsorship of this clinic is a
recreational program properly established and conducted
through the municipality's governmental powers.

Am Jur 2d, Municipal, County, School, and State Tort
Liability §§ 87-110.

Comment note—Municipal immunity from liability for torts.
60 ALR2d 1198.

State's immunity from tort liability as dependent on govern-
mental or proprietary nature of function. 40 ALR2d 927.

HICKMAN v. FUQUA

[108 N.C. App. 80 (1992)]

APPEAL by defendant City of Winston-Salem from order denying its motion for summary judgment entered 5 June 1991 by *Judge Preston Cornelius* in FORSYTH County Superior Court. Heard in the Court of Appeals 14 September 1992.

*Frye and Kasper, by Leslie G. Frye and Granice L. Geyer, for plaintiffs-appellees Andre L. Hickman, William L. Hickman, and Roslyn R. Hickman.*

*Womble Carlyle Sandridge & Rice, by Roddey M. Ligon, Jr. and Gusti W. Frankel, for defendant-appellant City of Winston-Salem.*

*Hendrick, Zotian, Cocklereece & Robinson, by William A. Blancato, for defendant-appellee Winston-Salem Tennis, Inc.*

LEWIS, Judge.

In this case we are asked to decide whether a city which co-sponsors a free youth tennis program held at a public high school that adjoins a city-owned park enjoys immunity from a negligence suit. Defendant City of Winston-Salem made a motion for summary judgment based upon governmental immunity. The trial court denied this motion, and the City appeals. We reverse.

The City of Winston-Salem and Winston-Salem Tennis, Inc., a private nonprofit corporation, have for over twenty years co-sponsored the Young Folks Tennis Clinic, a program which provides free tennis lessons for children. The clinics are held at various tennis courts throughout the city. During the summer of 1988, when the actions giving rise to the present lawsuit occurred, the clinics were offered at three locations: Carver High School, South Fork Recreation Center, and Hanes Park. Defendant David L. Lash was the tennis instructor at Carver.

On 18 July 1988 plaintiff Andre Hickman, then four years old, was attending the Tiny Tim Nursery and Kindergarten ("Tiny Tim"), which is located across and down the street a short distance from the Carver tennis courts. Plaintiff and other children from Tiny Tim were taken that morning to the Carver tennis courts so that they could participate in the Young Folks Tennis Clinic.

According to the complaint, after the lessons that day were completed, no one from Tiny Tim returned to pick up the children. Consequently, plaintiff Hickman and some other children attempted to cross the street to return to Tiny Tim. Plaintiff was struck

and injured by a car driven by defendant Fuqua. Plaintiff, by his guardian ad litem, and plaintiff's parents brought negligence actions against Fuqua, the City of Winston-Salem, Winston-Salem Tennis, Inc., Lash, and Helen W. Nichols in her individual capacity and doing business as Tiny Tim Nursery and Kindergarten. The present appeal concerns only the denial of the City of Winston-Salem's motion for summary judgment made on the grounds of governmental immunity.

It is a general rule that the denial of a motion for summary judgment is interlocutory and therefore not immediately appealable. However, recent case law clearly establishes that if immunity is raised as a grounds for the summary judgment motion, a substantial right is affected and the denial is immediately appealable. *Herndon v. Barrett*, 101 N.C. App. 636, 400 S.E.2d 767 (1991); *see also Corum v. University of North Carolina*, 330 N.C. 761, 413 S.E.2d 276 (1992) (denial of a motion for summary judgment based on immunity defenses to a 42 U.S.C. § 1983 action is immediately appealable). The present appeal is properly before this Court.

There are two basic immunity questions in the case at bar. First, has Winston-Salem waived its immunity pursuant to N.C.G.S. § 160A-485(a)(1987) by organizing a corporation, Risk Management Corporation ("RAMCO"), for the purpose of handling liability claims of $1,000,000.00 or less against the City? Secondly, by sponsoring the Young Folks Tennis Clinic is the City acting in its governmental or its proprietary capacity?

The North Carolina Supreme Court has recently answered the first question. In *Blackwelder v. City of Winston-Salem*, 332 N.C. 319, 420 S.E.2d 432 (1992), the Court held that the City of Winston-Salem did not waive its immunity from civil tort liability when it established RAMCO. The Court held that Winston-Salem has neither purchased liability insurance nor participated in a local governmental risk pool. Therefore, under the terms of N.C.G.S. § 160A-485(a), there is no waiver of immunity.

Only the second issue remains. The case law in this field has long given our courts difficulty and has "resulted in irreconcilable splits of authority and confusion as to what functions are governmental and what functions are proprietary." *Koontz v. City of Winston-Salem*, 280 N.C. 513, 528, 186 S.E.2d 897, 907 (1972).

The general rule is, of course, well established and straightforward: the doctrine of governmental immunity shields a municipality

HICKMAN v. FUQUA

[108 N.C. App. 80 (1992)]

from liability when the municipality performs a governmental function. Governmental immunity does not, however, apply when the municipality engages in a proprietary function.

Our Supreme Court has described governmental functions as those which are "discretionary, political, legislative, or public in nature and performed for the public good in behalf of the State." *Britt v. City of Wilmington*, 236 N.C. 446, 450, 73 S.E.2d 289, 293 (1952). By contrast, the proprietary activities undertaken by a municipality are those which are "commercial or chiefly for the private advantage of the compact community." *Id.*

The Supreme Court in *Britt* went further than merely defining the terms, and elucidated a test. "If the undertaking of the municipality is one in which only a governmental agency could engage, it is governmental in nature. It is proprietary and 'private' when any corporation, individual, or group of individuals could do the same thing." *Id.* at 451, 73 S.E.2d at 293.

Our courts, when applying this test, have focused on the commercial aspect of the definition. Decisions have looked at whether a monetary charge was involved in the activity, or at the amount of revenue the activity generated. However, there appears to be a split of authority over whether the court should consider the money raised solely by the activity, or whether it should consider the money raised by, for example, the entire parks and recreation department of a city. *Compare Casey v. Wake County*, 45 N.C. App. 522, 263 S.E.2d 360, *disc. rev. denied*, 300 N.C. 371, 267 S.E.2d 673 (1980) (Court looked only at the pecuniary aspects of the disputed family planning program and not at the entire health department program) *with Glenn v. City of Raleigh*, 248 N.C. 378, 103 S.E.2d 482 (1958) (Court considered revenue of a single park *in connection with* the overall budget requirements for operation of the City's entire recreation program).

While the record indicates that other tennis offerings unrelated to the Young Folks program produce revenue for the City, we find this fact irrelevant to this case. We are persuaded instead by the authority of *Casey*. In that case, the Court looked only to the costs particular to the individual program in dispute. We find further support for that position in language by the Supreme Court in *Rich v. City of Goldsboro*, 282 N.C. 383, 192 S.E.2d 824 (1972). There, the Court said: "This Court has held (*Glenn v. Raleigh*, 246 N.C. 469) that: 'In order to deprive a municipal corporation

of the benefit of governmental immunity, the *act or function* must involve special corporate benefit or pecuniary profit inuring to the municipality.' " *Id.* at 386, 192 S.E.2d at 826 (emphasis added).

If we consider only the Young Folks Tennis Clinic, we find there to be absolutely no charge involved. We also can find no evidence of revenue generated at Carver's tennis courts, which are owned by the local School Board, and merely leased by the City. It is irrelevant to our analysis that the tennis courts are adjacent to a public park.

In any event, a "profit motive" is not the sole determinative factor when deciding whether an activity is governmental or proprietary. *Sides v. Cabarrus Memorial Hospital*, 287 N.C. 14, 23, 213 S.E.2d 297, 303 (1975). Using the *Britt* test, courts look to see whether an undertaking is one "traditionally" provided by the local governmental units. *Id.* at 25, 213 S.E.2d at 304. The creation and operation of public parks and recreation programs are legitimate and traditional functions of the government. *See Hare v. Butler*, 99 N.C. App. 693, 698, 394 S.E.2d 231, 235, *disc. rev. denied*, 327 N.C. 634, 399 S.E.2d 121 (1990). Going one step farther, we hold that when a municipality provides free sports instruction as under the facts of this case, it is acting in a governmental capacity.

Our holding is made even clearer in light of the General Assembly's pronouncement on the general subject. Our Legislature has declared State policy to be as follows:

> The lack of adequate recreational programs and facilities is a menace to the morals, happiness, and welfare of the people of this State. Making available recreational opportunities for citizens of all ages is a subject of general interest and concern, and a function requiring appropriate action by both State and *local government.* The General Assembly therefore declares that the public good and the general welfare of the citizens of this State require adequate recreation programs, that the *creation, establishment, and operation of* parks and *recreation programs is a proper governmental function*, and that it is the policy of North Carolina to forever encourage, foster, and provide these facilities and programs for all its citizens.

N.C.G.S. § 160A-351 (1987) (emphasis added).

Each city in the State is expressly given the power and authority to "[e]stablish and conduct a system of supervised recreation."

N.C.G.S. § 160A-353(1) (1987). "Recreation" is defined by statute as "activities that are diversionary in character and aid in promoting entertainment, pleasure, relaxation, instruction, and other physical, mental, and cultural development and leisure time experiences." N.C.G.S. § 160A-352 (1987).

The statute is clear. The City's sponsorship of the Young Folks Tennis Clinic is a recreational program properly established and conducted through the municipality's governmental powers. As such, and in the absence of liability insurance, the City is immune from liability for torts arising out of the program.

We therefore reverse the trial court's denial of Winston-Salem's motion for summary judgment and remand for entry of summary judgment in the City's favor.

Reversed and remanded.

Chief Judge HEDRICK and Judge WYNN concur.