STEVEN M. FISHER, GUARDIAN AD LITEM FOR RHONDA CHILDS, A MINOR, PLAINTIFF V. THE HOUSING AUTHORITY OF THE CITY OF KINSTON, NORTH CAROLINA, DEFENDANT

No. COA01-1560

(Filed 31 December 2002)

**Immunity— sovereign—housing authority—operation of low-income housing—proprietary function**

The trial court erred in a breach of implied warranty of habitability, breach of express warranty, negligence, and unfair and deceptive trade practices case by granting summary judgment in favor of defendant housing authority on the basis of sovereign immunity because the operation of low-income housing is a pro-

prietary function rather than governmental, and thus, defendant cannot assert sovereign immunity as a defense.

Appeal by plaintiff from judgment entered 27 June 2001 by Judge Benjamin G. Alford in Lenoir County Superior Court. Heard in the Court of Appeals 12 September 2002.

*Donaldson & Black, P.A., by Phyllis Lile-King, for plaintiff-appellant.*

*White & Allen, P.A., by Matthew S. Sullivan and Thomas J. White, III, for defendant-appellee.*

HUDSON, Judge.

Plaintiff Rhonda Childs ("Plaintiff"), a minor, brought suit through her guardian ad litem against the Housing Authority of the City of Kinston ("Housing Authority") in 2000. Plaintiff alleged that she has sustained injuries from exposure to lead paint, due to the Housing Authority's failure to properly maintain an apartment building that it owned. The Housing Authority moved for summary judgment on the basis of sovereign immunity. The trial court granted the motion. For the reasons set forth below, we reverse the judgment of the trial court.

Plaintiff is eleven years old. From either 1996 or 1997—the year is disputed—until 2000, Plaintiff lived with her mother in an apartment at 3 Mitchell Wooten Court in Kinston, North Carolina, property that is owned and maintained by the Housing Authority. Plaintiff alleges that during that period, she was exposed to peeling and chipping lead paint because the Housing Authority failed to properly maintain and repair the apartment. Plaintiff alleges that she now suffers from permanent brain damage due to the lead exposure.

Plaintiff filed this suit in November 2000, alleging that the Housing Authority violated the North Carolina Residential Rental Agreements Act, N.C. Gen. Stat. § 42-38 et seq.; that it breached the implied warranty of habitability; that it breached an express warranty; that it was negligent; and that it engaged in unfair and deceptive practices in contravention of N.C. Gen. Stat. § 75-1.1. Plaintiff sought actual, treble, and punitive damages. The Housing Authority moved for summary judgment in April 2001, arguing that sovereign immunity precluded Plaintiff from maintaining this action. The trial court granted the motion on June 27, 2001. Plaintiff now appeals.

Plaintiff argues that the trial court erroneously granted summary judgment in favor of the Housing Authority. She contends that operating low-income housing is a proprietary, not governmental, function and, therefore, that the Housing Authority cannot assert sovereign immunity as a defense in this action. We agree.

Summary judgment is properly granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. R. Civ. P. 56(c) (2001). The burden to demonstrate the absence of a triable issue lies with the moving party, who must show either (1) that an essential element of the opposing party's claim is nonexistent or (2) that the opposing party cannot produce evidence sufficient to support an essential element of the claim or to overcome an affirmative defense that would bar its claim. *Pierson v. Cumberland County Civic Ctr. Comm'n*, 141 N.C. App. 628, 630, 540 S.E.2d 810, 812 (2000). The trial court must consider the evidence in the light most favorable to the nonmoving party and draw all inferences from the evidence against the moving party and in favor of the nonmovant. *Id.* at 631, 540 S.E.2d at 812.

In general, the doctrine of sovereign immunity shields municipalities from liability for torts committed by its agencies and organizations unless immunity has been waived by the General Assembly or otherwise. *Wood v. North Carolina State Univ.*, 147 N.C. App. 336, 338, 556 S.E.2d 38, 40 (2001), *disc. review denied*, 355 N.C. 292, 561 S.E.2d 887 (2002); *Herring ex rel. Marshall v. Winston-Salem/Forsyth County Bd. of Educ.*, 137 N.C. App. 680, 685, 529 S.E.2d 458, 462, *disc. review denied*, 352 N.C. 673, 545 S.E.2d 423 (2000). Application of the doctrine depends in part upon whether the activity out of which the tort arises is properly characterized as governmental or proprietary in nature. *Pierson*, 141 N.C. App. at 631, 540 S.E.2d at 813. The doctrine applies when the entity is being sued for the performance of a governmental function, but it does not apply when the entity is performing a proprietary function. *Herring*, 137 N.C. App. at 683, 529 S.E.2d at 461; *Messick v. Catawba County*, 110 N.C. App. 707, 714, 431 S.E.2d 489, 493, *disc. review denied*, 334 N.C. 621, 435 S.E.2d 336 (1993).

As our Supreme Court has explained, governmental functions are those that are "discretionary, political, legislative, or public in nature and performed for the public good [on] behalf of the State." *Britt v. City of Wilmington*, 236 N.C. 446, 450, 73 S.E.2d 289, 293 (1952). In

contrast, proprietary activities are those that are "commercial or chiefly for the private advantage of the compact community." *Id.* The test for distinguishing between the two is as follows: "If the undertaking of the municipality is one in which only a governmental agency could engage, it is governmental in nature. It is proprietary and 'private' when any corporation, individual, or group of individuals could do the same thing. . . ." *Id.* at 451, 73 S.E.2d at 293; see also *Herring*, 137 N.C. App. at 683, 529 S.E.2d at 461.

In applying this test, our courts have analyzed whether the act or function involves special corporate benefit or pecuniary profit that inures to the municipality. *Hickman v. Fuqua*, 108 N.C. App. 80, 83-84, 422 S.E.2d 449, 451 (1992), *disc. review denied*, 333 N.C. 462, 427 S.E.2d 621 (1993); see also *Sides v. Cabarrus Mem'l Hosp., Inc.*, 287 N.C. 14, 22, 213 S.E.2d 297, 302 (1975) (noting that an "analysis of the various activities that this Court has held to be proprietary in nature reveals that they involved *a monetary charge* of some type"). It is not necessary, however, that the public body actually make a profit. *Sides*, 287 N.C. at 23, 213 S.E.2d at 303; *Pierson*, 141 N.C. App. at 632, 540 S.E.2d at 813. The main issue remains, under the test set forth in *Britt*, whether an "undertaking is one traditionally provided by the local governmental units." *Hickman*, 108 N.C. App. at 84, 422 S.E.2d at 452 (citation and quotation marks omitted).

Using these tests, we conclude here that the Housing Authority's activities in owning, operating, and maintaining the low-income housing occupied by Plaintiff is a proprietary function. Managing low-income housing is not an enterprise in which only governmental entities can engage. Any individual or corporation can—and, in fact, often does—own and operate low-income housing. Providing rental housing does not traditionally fall within the government's purview.

In addition, the Housing Authority in most cases collects rents from its tenants. Although the Housing Authority may not make a profit, our cases require only that a *"monetary charge* of some type" be involved. *Sides*, 287 N.C. at 22, 213 S.E.2d at 302.

Two prior decisions further compel our conclusion that operating low-income housing is a proprietary function. In *Carter v. City of Greensboro*, 249 N.C. 328, 106 S.E.2d 564 (1959), the City of Greensboro entered into a contract with the federal government that required the city to manage and maintain public housing units. The plaintiff, who lived in one of the units, sued the city after a trash

fire was left unattended and caused severe injuries to the plaintiff. *Id.* at 329, 106 S.E.2d at 565-66.

The Supreme Court in *Carter* noted that the defendant made three arguments on appeal, the second of which was: "(2) the defendant is immune from liability for negligence in this case in that the injury occurred incident to the performance of a necessary governmental function." 249 N.C. at 330, 106 S.E.2d at 566. To resolve the issue, the Court directly addressed "whether the defendant acted in its governmental or in its proprietary capacity." *Id.* at 332-33, 106 S.E.2d at 568.

In the Court's view, the "duties the city assumed and the purposes it sought to accomplish, the special and limited class of tenants who could qualify for occupancy, and the substantial financial returns the city received under the contract placed the city's management of the project in the category of proprietary activity." *Id.* at 333, 106 S.E.2d at 568-69. The same holds true here.

The Housing Authority contends that *Carter* is not controlling. It argues that *Carter* is not a "housing authority" case because the public entity at issue was a city and not a housing authority acting pursuant to statute. The Housing Authority also submits that *Carter* is distinguishable because the city in *Carter* was acting pursuant to a contract with the federal government, while the Housing Authority in this case had no such contractual obligation.

We do not agree that these factual distinctions affect the analysis. That the Housing Authority was acting pursuant to statute does not automatically render its actions governmental and is not relevant to our analysis. Much activity by a housing authority is regulated by statute, as is much activity by a municipality. Similarly, the fact that the city in Carter was acting pursuant to a contract with the federal government did not affect the Supreme Court's decision on this issue and does not affect ours.

More recently, this Court addressed a very similar issue, in *Jackson v. Housing Authority of the City of High Point,* 73 N.C. App. 363, 326 S.E.2d 295, *disc. review denied,* 313 N.C. 603, 330 S.E.2d 610 (1985). There, the plaintiff's estate sued the defendant Housing Authority after the plaintiff, a resident of a housing project that the Housing Authority owned and operated, died from carbon monoxide poisoning. The estate alleged that the Housing Authority was negligent in failing to maintain the heater and flue in the plaintiff's unit,

which had become clogged and had caused the plaintiff's death. *Id.* at 364-66, 326 S.E.2d at 296-97.

The Housing Authority argues that Jackson is inapposite because the parties did not raise immunity as an issue. However, this Court did. It noted the following: "[T]he court did not specify what the perceived weakness in plaintiff's case was and we will briefly address the possibilities that the record suggests." *Jackson*, 73 N.C. App. at 367, 326 S.E.2d at 297-98. As the Court explained, "[c]ertainly the claim is not barred because of defendant's status as an arm of the City of High Point in operating a low income housing project; such activities are proprietary, rather than governmental, and municipalities are legally accountable therefor on the same basis as other defendants." *Id.* at 367, 326 S.E.2d at 298 (citing, inter alia, *Carter*). We find this analysis logical, and we hold accordingly. The parties also dispute whether the Housing Authority had purchased insurance for the unit in which Plaintiff resided and, if so, what that policy covered and excluded. Because we hold that the Housing Authority was engaging in a proprietary function, and that sovereign immunity did not apply, we need not reach these remaining questions.

We conclude that the Housing Authority, by owning and operating low-income housing, engaged in a proprietary function. Accordingly, it is not protected by the doctrine of sovereign immunity. We reverse the decision of the trial court and remand for further proceedings.

Reversed.

Judges TIMMONS-GOODSON and CAMPBELL concur.