ESTATE OF VERA HEWETT, ET AL, PLAINTIFFS v. COUNTY OF BRUNSWICK, DEFENDANT

No. COA08-1071

(Filed 1 September 2009)

**Immunity— governmental—voluntary program to remove junk**

Defendant Brunswick County was entitled to governmental immunity and should have been granted summary judgment in an action arising from a free program to remove junk items from citizen's property on request, with the purpose of protecting and maintaining property values, eliminating public health or environmental nuisances, and protecting public safety and welfare. Although plaintiffs argued that the program was proprietary because it was not an undertaking that could be performed only by the government, prior cases have held that cleaning up a municipality or collecting trash and junk were governmental functions.

Appeal by defendant from order entered 6 June 2008 by Judge William F. Fairley in Brunswick County Superior Court. Heard in the Court of Appeals 10 March 2009.

*J. Eric Altman for plaintiff-appellee.*

*Womble Carlyle Sandridge & Rice, by James R. Morgan, Jr. and Robert T. Numbers, II, for defendant-appellant.*

GEER, Judge.

Defendant, the County of Brunswick, appeals from the trial court's order denying the County's motion for summary judgment on the ground of governmental immunity. On appeal, the County contends that plaintiffs' suit is barred because the operation of the Appearance and Code Enforcement ("ACE") Program—through which the County would remove without charge certain items from its citizens' property—was a governmental function. Because we agree, we reverse the trial court's denial of the County's motion for summary judgment and remand for entry of summary judgment in favor of the County.

### Facts

The County operated the ACE Program from 20 August 2001 until 1 July 2007. Under that program, the County removed junk items such as dilapidated mobile homes, junked vehicles, and abandoned structures—from its citizens' property upon request, free of charge. The purpose of the ACE program was "to improve the appearance of Brunswick County, protect and maintain property values, eliminate public health and/or environmental nuisances and protect public safety and welfare."

The County was asked to demolish and remove a barn on the property of Irene Holden, located at 1487 Holden Beach Road in Supply, North Carolina. On 15 October 2003, County employees instead mistakenly demolished barns on the properties of Vera H. Hewett and Vera L. Hewett, located at 2150 Ouida Trail, SW and 1535 Holden Beach Road, SW in Supply, North Carolina.

On 14 June 2006, plaintiffs—the Estate of Vera H. Hewett, Vera L. Hewett, O. Kenneth Hewett, and Jeris D. Hewett—filed a complaint against the County, alleging claims for negligence, unjust enrichment, and conversion. Plaintiffs contended that "[a]gents of the defendant negligently destroyed the barns located on [their] property and

owned by the plaintiffs without the plaintiffs' consent" and that "[a]gents of defendant negligently removed the contents of said barns which included, but were not limited to: various antiques, tools, irreplaceable motor parts and building supplies." Plaintiffs further alleged that the County was unjustly enriched by keeping the contents of the demolished barns without paying for them and that the County "converted to [its] own use those items of personal property" recovered from the barns.

On 19 May 2008, the County filed a motion for summary judgment, contending that it was "entitled to summary judgment as a matter of law because Plaintiffs cannot overcome Brunswick County's affirmative defense of governmental immunity." On 6 June 2008, the trial court entered an order denying the County's motion for summary judgment. The County gave notice of appeal on 3 July 2008.

### Discussion

On appeal, the County contends it is entitled to summary judgment because it is protected from plaintiffs' suit by sovereign immunity. We first note that a trial court's denial of a motion for summary judgment is an interlocutory order that ordinarily is not immediately appealable. *Anderson v. Town of Andrews*, 127 N.C. App. 599, 601, 492 S.E.2d 385, 386 (1997). "Although a party generally has no right to immediate appellate review of an interlocutory order, we have held that orders denying dispositive motions grounded on the defense of governmental immunity are immediately reviewable as affecting a substantial right." *Hedrick v. Rains*, 121 N.C. App. 466, 468, 466 S.E.2d 281, 283, *aff'd per curiam*, 344 N.C. 729, 477 S.E.2d 171 (1996). The County's appeal, therefore, is properly before this Court.

"When the denial of a summary judgment motion is properly before this Court, as here, the standard of review is *de novo*." *Free Spirit Aviation, Inc. v. Rutherford Cty. Airport Auth.*, 191 N.C. App. 581, 583, 664 S.E.2d 8, 10 (2008). Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.R. Civ. P. 56(c). Summary judgment should be granted "'if the non-moving party is unable' to overcome an affirmative defense offered by the moving party.'" *Free Spirit Aviation*, 191 N.C. App. at 583, 664 S.E.2d at 10 (quoting *Griffith v. Glen Wood Co.*, 184 N.C. App. 206, 210, 646 S.E.2d 550, 554 (2007)).

ESTATE OF HEWETT v. CNTY. OF BRUNSWICK

[199 N.C. App. 564 (2009)]

"'Under the doctrine of governmental immunity, a county is immune from suit for the negligence of its employees in the exercise of governmental functions absent waiver of immunity.'" *Evans v. Hous. Auth. of City of Raleigh*, 359 N.C. 50, 53, 602 S.E.2d 668, 670 (2004) (quoting *Meyer v. Walls*, 347 N.C. 97, 104, 489 S.E.2d 880, 884 (1997)). The doctrine, however, "covers only the acts of a municipality or a municipal corporation committed pursuant to its governmental functions." *Id.*

The parties in this case dispute whether the ACE program constituted a governmental function.[1] In *Evans*, the Supreme Court described the difference between governmental and proprietary functions as follows:

"Any activity of the municipality which is discretionary, political, legislative or public in nature and performed for the public good in behalf of the State, rather than for itself, comes within the class of governmental functions. When, however, the activity is commercial or chiefly for the private advantage of the compact community, it is private or proprietary."

*Id.* at 54, 602 S.E.2d at 671 (quoting *Millar v. Town of Wilson*, 222 N.C. 340, 341, 23 S.E.2d 42, 44 (1942)).

The Court acknowledged that it had "provided various tests for determining into which category a particular activity falls," but stressed that it had also "consistently recognized one guiding principle":

"[G]enerally speaking, the distinction is this: If the undertaking of the municipality is one in which only a governmental agency could engage, it is governmental in nature. It is proprietary and 'private' when any corporation, individual, or group of individuals could do the same thing."

*Id.* (quoting *Britt v. City of Wilmington*, 236 N.C. 446, 451, 73 S.E.2d 289, 293 (1952)).

Thus, "[t]he liability of cities and towns for the negligence of their officers or agents, depends upon the nature of the power that the cor-

---

1. The County also argued in its brief that its participation in a county risk pool did not waive its governmental immunity with respect to claims for property damage because those claims are not covered by the policy. As plaintiffs have chosen not to challenge this argument, we do not address it. Nothing in this opinion should be construed as expressing any view as to whether the county risk pool policy did or did not waive immunity as to the claims asserted by plaintiffs in the complaint.

poration is exercising, when the damage complained of is sustained." *Moffitt v. City of Asheville*, 103 N.C. 237, 254, 9 S.E. 695, 697 (1889). As the *Moffitt* Court explained over a century ago:

> When such municipal corporations are acting (within the purview of their authority) in their ministerial or corporate character in the management of property for their own benefit, or in the exercise of powers, assumed voluntarily for their own advantage, they are impliedly liable for damage caused by the negligence of officers or agents, subject to their control, although they may be engaged in some work that will enure to the general benefit of the municipality. . . .

> On the other hand, where a city or town in exercising the judicial, discretionary or legislative authority, conferred by its charter, or is discharging a duty, imposed solely for the benefit of the public, it incurs no liability for the negligence of its officers, though acting under color of office, unless some statute (expressly or by necessary implication) subjects the corporation to pecuniary responsibility for such negligence.

*Id.* at 254-55, 9 S.E. at 697.

In line with the principle set out in *Britt* and reaffirmed in *Evans*, plaintiffs argue that the ACE program is proprietary because it is not an undertaking that could only be performed by the government. Plaintiffs point out that the ACE program is a demolition and junk removal service that could be performed by any corporation, individual, or group of individuals.

In response, the County relies on *McIver v. Smith*, 134 N.C. App. 583, 518 S.E.2d 522 (1999), *disc. review improvidently allowed*, 351 N.C. 344, 525 S.E.2d 173 (2000), in which this Court interpreted the language in *Britt*. In *McIver*, the plaintiffs argued that under *Britt*, a county "ambulance service is a proprietary activity because it is providing a service that any private individual or corporation could provide." *McIver*, 134 N.C. App. at 587, 518 S.E.2d at 526. This Court rejected that argument, explaining that "[a]ctivities which can be performed *only* by a government agency are shielded from liability, while activities that can be performed by either private persons or government agencies may be shielded, depending on the nature of the activity." *Id.*

The Court reasoned that "[t]his interpretation of *Britt* is the only way to reconcile its holding with other cases." *Id.* The Court noted

that "children may be educated by either public schools or private schools, but public schools are still granted governmental immunity." *Id.* Similarly, the Court pointed out, "[p]rivate citizens may haul off and dispose of leaves just like government employees, but government leaf haulers are afforded governmental immunity." *Id.* The Court, therefore, held that a "county-operated ambulance service is a governmental activity shielded from liability by governmental immunity." *Id.* at 588, 518 S.E.2d at 526.

The County argues, based on *McIver*, that the fact that the ACE program could be run by a private entity or individual does not mean it is automatically a proprietary function. The County contends that because the ACE program is intended to serve the public health and welfare, a traditionally governmental purpose, the ACE program is a governmental function. *See id.* at 586, 518 S.E.2d at 525 ("Since the responsibility for preserving the health and welfare of citizens is a traditional function of government, it follows that the county may operate government functions that ensure the health and welfare of its citizens. An ambulance service does just this. It is also noteworthy that the legislature granted counties the power to operate ambulance services in all or part of their respective jurisdictions. The focus is therefore on the nature of the service itself, not the provider of the service." (internal citations omitted)).

In *Evans*, 359 N.C. at 54, 602 S.E.2d at 671, however, while noting "[t]he difficulties of applying [the *Britt*] principle[,]" the Supreme Court did not adopt the approach advocated by the County in this case and used by this Court in *McIver* and did not in any way modify the categorical language of the rule expressed in *Britt*. Nevertheless, the Supreme Court's application of *Evans* suggests that the rule cannot be as absolute as *Britt* indicates.

In *Fisher v. Hous. Auth. of City of Kinston*, 155 N.C. App. 189, 192, 573 S.E.2d 678, 681 (2002), this Court held that a "Housing Authority's activities in owning, operating, and maintaining the low-income housing . . . is [sic] a proprietary function." The Court reasoned:

> Managing low-income housing is not an enterprise in which only governmental entities can engage. Any individual or corporation can—and, in fact, often does—own and operate low-income housing. Providing rental housing does not traditionally fall within the government's purview.

*Id.* That decision was reversed by the Supreme Court based solely on *Evans. Fisher v. Hous. Auth. of City of Kinston*, 359 N.C. 59, 59, 602 S.E.2d 359, 360 (2004) (per curiam). Implicit in that reversal is an acknowledgment by the Supreme Court that the mere fact that a function could be performed by non-governmental entities does not necessarily require the conclusion that the function is proprietary. Because of the difficulty this Court has experienced in reconciling the *Britt* rule with other precedent, guidance from the Supreme Court is needed as to the appropriate test for determining whether a function is governmental or proprietary.

Nonetheless, when grappling with these issues, both this Court and the Supreme Court have looked to prior cases involving similar functions to determine whether an activity is governmental or proprietary. Historically, our courts have concluded that when municipalities engage in activities to clean up the municipality or to collect trash, junk, or other waste, they are engaging in governmental functions. For example, in *Hines v. City of Rocky Mount*, 162 N.C. 409, 411, 78 S.E. 510, 511 (1913), the Supreme Court held that a city-organized general cleanup of the city was a governmental function for which immunity was available. The Court reasoned that because the city's Board of Aldermen had the "power to make proper regulations for the conservation of the public health," the acts of the city in cleaning up the trash around the city "were chiefly in the exercise or attempted exercise of the powers there conferred, and should be considered governmental in character." *Id.*, 78 S.E. at 510-11. *See also Blackwelder v. City of Winston-Salem*, 332 N.C. 319, 323-24, 420 S.E.2d 432, 435-36 (1992) (holding that city was immune with respect to plaintiff's collision with city garbage truck because garbage collection is governmental function); *Stephenson v. City of Raleigh*, 232 N.C. 42, 46, 59 S.E.2d 195, 198-99 (1950) (barring claim by plaintiff who crashed scooter into back of city's truck when employees were collecting and removing prunings from shrubbery and trees from citizens' homes because city's pruning collection was governmental function); *Broome v. City of Charlotte*, 208 N.C. 729, 731, 182 S.E. 325, 326-27 (1935) (finding city immune from suit arising from plaintiff's death after being hit by trash truck because trash collection is governmental function); *James v. City of Charlotte*, 183 N.C. 630, 632-33, 112 S.E. 423, 424 (1922) (determining that city employee removing and transporting garbage from private property was engaged in governmental function).

ESTATE OF HEWETT v. CNTY. OF BRUNSWICK

[199 N.C. App. 564 (2009)]

The ACE program was primarily a trash and junk collection service. The stated goals of the ACE Program were to "improve the appearance of Brunswick County, protect and maintain property values and eliminate any potential public health and/or environmental nuisances." In his affidavit, J. Leslie Bell, Director of Planning and Community Development for the County, explained that the ACE Program provided the "free removal services as part of the program's efforts to eliminate public health nuisances and protect public safety and welfare."

In light of the nature and stated purposes of the ACE program, we do not believe that it can be meaningfully distinguished from the foregoing cases, and, therefore, hold that the County was engaged in a governmental function when conducting the program. The County, consequently, is entitled to governmental immunity in this action. We, therefore, reverse and remand for the entry of summary judgment in the County's favor.

Reversed and remanded.

Judges McGEE and BEASLEY concur.